# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 93

APRIL TERM, A.D. 2015

*July 17, 2015*

| | |
|---|---|
| CITY OF CASPER, and V.H. MCDONALD, CPA, in his capacity as the Administrative Services Director of the City of Casper, **Appellants (Respondents),** v. KIMBERLY HOLLOWAY, individually and as a citizen of Casper, Wyoming, and as a member of the Smoke Free Committee, **Appellee (Plaintiff).** | S-14-0284 |

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellants:*
    William C. Luben, City Attorney, Casper, Wyoming

*Representing Appellee:*
    Mary Ann Budenske, Attorney at Law, Casper, Wyoming

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS, Justice**.

[¶1]    Appellants City of Casper and City Clerk V.H. McDonald[1] appeal from a district court summary judgment order interpreting statutes regulating municipal referendum petitions in favor of Appellee Kimberly Holloway.  We affirm in part and reverse in part.

## ISSUES

[¶2]    While Appellants present several issues for our review, because this matter is one for declaratory judgment arising from agency interpretation and application of certain statutes, our review calls for us to distill the issues into three controlling questions:

1.    Was the district court's jurisdiction limited to issuing a declaratory judgment under W.R.A.P. 12.12 and Wyo. Stat. Ann. § 1-37-101 *et seq*. (LexisNexis 2013) concerning the interpretation of certain statutes related to a municipal ordinance referendum?

2.    Did the district court err when it interpreted Wyo. Stat. Ann. § 22-23-1005 (LexisNexis 2013) to mean that qualified electors registered in a city for purposes of a municipal ordinance referendum petition remain so even if they have moved to a different address within the city without updating their address with the county clerk as required by Wyo. Stat. Ann. 22-3-114 (LexisNexis 2013)?

3.    In discharging his duties under Wyo. Stat. Ann. § 22-23-1006, was the City Clerk statutorily permitted to automatically reject a signature on the municipal referendum petitions if the signatory's address stated on the petition was different than that on the county clerk's voter registration list?

## FACTS

[¶3]    In June 2012, the Casper City Council passed an ordinance (Ordinance No. 17-12) repealing and replacing the existing ordinance that governed smoking in public places.  The 2012 ordinance generally prohibited smoking in all enclosed areas of public places within the City of Casper.  A year later, in June 2013, the Council passed another ordinance (Ordinance No. 15-13) amending the 2012 ordinance to loosen some of the restrictions on where smoking was permitted.  The principal change was to allow smoking in bars and taverns.

---

[1] The case captions in the district court and here refer to Mr. McDonald as "Administrative Services Director for the City of Casper," but otherwise both here and below the parties referred to Mr. McDonald as the City Clerk.  We will do the same.

1

[¶4]   A group of individuals took exception to the 2013 ordinance and formed the Smoke Free Committee, which sought to subject the ordinance to a referendum vote pursuant to Wyo. Stat. Ann. § 22-23-1005.  The Committee worked with the City Clerk to develop the form of a referendum petition.  As a result of this joint effort, a final form of the referendum petition was accepted and used by the Committee in its referendum drive to place the 2013 ordinance on the ballot.

[¶5]   The City Clerk for Casper, V.H. McDonald, required the statement in the form that names and addresses "must be exactly the same as it appears on the current voter registration rolls" so that his staff (acting as reviewers) could apply clear standards to determine whether signatories were qualified electors registered with the City of Casper as required by Wyo. Stat. Ann. § 22-23-1005.  With the form agreed upon, the Committee began to seek signatures of qualified voters.

[¶6]   The Committee ultimately and timely submitted 59 petitions to the City Clerk for his review and determination in accordance with Wyo. Stat. Ann. § 22-23-1006.  There were a total of 3,078 signatures on the petitions submitted.

[¶7]   Upon receiving the petitions, the City Clerk obtained the voter registration list from the County Clerk for Natrona County and supervised the review and verification of the referendum petitions by his staff.  To facilitate the review, the City Clerk developed "Petition Review Guidelines" for the reviewers to compare the signatures and addresses contained in the petitions to the names and addresses as set forth in the voter registration list.  Specifically, the guidelines set forth the following:

- Address matches with the Natrona County Clerk's registered voter list were required.
- The general form of the first name was not critical if the address matched (e.g. John and Jonathon).
- Street addresses did not require apartment numbers.
- The middle name or initial was not critical if the address matched.
- No post office box addresses were allowed.
- Suffixes were to be carefully reviewed.

The City Clerk's guidelines relaxed the requirement on the petition that names and addresses "must be exactly the same" as they appear on the then-current voter registration list somewhat.

[¶8]   With the voter registration list in hand and guidelines in place, four staff members of the City Clerk's office began a methodical process of verifying the signatures on the

petitions.[2]  Ultimately, the City Clerk found that there were 2,393 valid signatures out of 3,078.

[¶9]  Pursuant to Wyo. Stat. Ann. § 22-23-1005, a referendum petition must be signed by at least 10% of the qualified electors in the city.  Based on the then current voter registration list, there were 24,543 registered voters within Casper when the petition was submitted.  As a result, 2,454 valid signatures were required in order to subject the ordinance to a referendum vote.

[¶10]  In light of the City Clerk's determination that the petitions contained 2,393 valid signatures, the referendum was 61 valid signatures short.  The City Clerk then certified the results to Casper's City Manager.

[¶11]  Undeterred, Holloway and others from the Committee sent a letter that included a list of rejected signatures they felt ought to have been considered valid to the City Clerk.  The Clerk responded by letter, explaining why some of the signatures were considered invalid.  While he reviewed certain signatures on the list provided by the Committee, he did not reconsider the signatures where the address on the petitions did not match the address on the voter registration list as the committee asked him to do.  More correspondence followed, reaching an impasse when the Clerk stated that he would rely on the initial review of the petition signatures and would not perform a recount.

[¶12]  Holloway filed a complaint in the district court challenging the City Clerk's determination.  She sought declaratory and referred to injunctive relief, attempting to invoke jurisdiction pursuant to Wyo. Stat. Ann. §§ 22-24-122 and 22-23-101.[3]  Appellants answered, generally denying the claims, and including *inter alia*, a jurisdictional defense that the district court "lacks jurisdiction to hear Plaintiff's Complaint for the review and determination of declaratory and injunctive relief."

[¶13]  After Holloway filed her complaint, the Committee provided the Clerk another list of an additional 102 signatures, which it claimed were wrongfully disallowed.  The Clerk reviewed and compared the list of signatures, and found most had already been brought to his attention by the Committee in its previous correspondence.  Nevertheless, he and his staff re-reviewed those signatures and found as follows: 4 should have been verified as valid signatures for the petition drive; 11 had previously been counted in favor of the Committee; **67 of the signatory's addresses did not match the voter registration list**; 10 of the signatures were illegible; 9 of the signatories were not on the voter registration

---

[2] We note that the City Clerk utilized a detailed and labor intensive process to review, cross-check and confirm the validity of the petition's signatures.  Delving into the details of that process in this opinion is not necessary because the issues presented for our review do not hinge upon it.

[3] In her complaint, Holloway states jurisdiction pursuant to "W.S. 22-23-202" but we understand that citation to be an inadvertent mistake and assume she meant § 22-23-101.

3

list; one signatory did not provide sufficient information; and the given names of two did not match the voter registration list.

[¶14] The parties filed cross-motions for summary judgment. The district court held a hearing at which the parties agreed that there were no genuine issues of material fact; that is, the facts were undisputed. Thus, the district court faced only questions of law, and it entered an oral ruling in favor of Holloway, determining that:

- Jurisdiction to consider the case was derived from Wyo. Stat. Ann. § 22-24-122, which deals with statewide referenda and provides that "[a]ny person aggrieved by any determination made under this article, by the secretary of state or by the attorney general, may bring an action in the district court of Laramie county to have the determination reviewed by filing application within thirty (30) days of the date on which notice of the determination was given."[4] The district court reasoned that while the matter before the district court was a municipal referendum, the City Clerk's role was functionally equivalent to that of the Secretary of State in statewide referenda. In addition, it noted that the statutes that apply to municipal referenda appear in the Wyoming Election Code in the chapter on municipal elections, which precedes the chapter on statewide referenda.

- The standard of review to be applied to the undisputed facts should be the same as this Court applied in reviewing the Secretary of State's determination on a statewide initiative petition—i.e., whether or not that action was arbitrary and capricious. The district court found support for its position in *Thomson v. Wyoming In-Stream Flow Comm.*, 651 P.2d 778, 791 (Wyo. 1982). It also reasoned that the arbitrary and capricious standard of review applies to administrative proceedings which were not conducted as trial-type adjudications or contested cases, citing *N. Laramie Range Found. v. Converse Cnty. Bd. of Cnty. Comm'rs*, 2012 WY 158, ¶ 10, 290 P.3d 1063, 1070 (Wyo. 2012).

- The City Clerk's requirement that the signatory's address match the address on the voter registration list was "legally incorrect." After reviewing the applicable statutes, the district court reasoned that "one could move lawfully to a different address within the city of Casper without updating their address and still legally be a qualified elector registered in the city of Casper." It further determined that the City Clerk's decision to automatically disqualify a signor if the address listed on the petition did not match the voter registration list "not only arbitrarily excluded signors based on an incorrect legal principle . . . it arbitrarily excluded the signors

---

[4] In 2015, the General Session of the 63rd Wyoming Legislature repealed, recodified and amended § 22-24-101 through § 22-24-125. There were no changes to the text of § 22-24-122, but it is now found at § 22-24-418. *See* 2015 Wyo. Sess. Laws ch. 6 (S.F. 49). Because this case preceded the 2015 amendments, we will refer to the statutes existing at the time—Wyo. Stat. Ann. § 22-24-101 *et seq*. (LexisNexis 2013).

4

without considering and in disregard of the other information about the signor that was listed on the petition." The City Clerk should have "considered the totality of the information available as to each signor in reviewing the petitions, including the unique combinations of the name listed, whether there was another person of the same gender with the same or a similar name on the registry list, and the telephone number of the signor listed . . . ."

- Ultimately, based on the undisputed facts and as a matter of law, Holloway demonstrated to the district court's satisfaction that the City Clerk acted arbitrarily and capriciously in determining that the petitions were legally insufficient.

[¶15] An order incorporating the oral ruling and stating that Holloway "has established based on the undisputed facts, and as a matter of law, that the defendant acted arbitrary and capriciously in determining that the petitions the plaintiff submitted in support of a referendum on the City of Casper's 2013 ordinance regarding smoking in public places were legally insufficient" followed soon thereafter. Appellants then timely perfected this appeal.

## DISCUSSION

### *Jurisdiction*

[¶16] Before considering the substantive issues in this case, we must first address the threshold question of subject matter jurisdiction. While the parties have not briefed jurisdiction in this Court, whether it exists "may be asserted at any time by any interested party or *sua sponte* by the court at the trial or appellate level." *In re AGS*, 2014 WY 143, ¶ 15, 337 P.3d 470, 476 (Wyo. 2014) (citation and quotation marks omitted). "The existence of subject matter jurisdiction is a question of law that we review *de novo*." *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (citation and quotation marks omitted).

[¶17] In her complaint, Holloway sought to invoke subject matter jurisdiction pursuant to Wyo. Stat. Ann. §§ 22-23-101 and 22-24-122.[5] The former, which resides in the chapter on municipal elections, states that "[u]nless otherwise specifically provided, a municipal election shall be governed by laws regulating statewide elections." Wyo. Stat. Ann. § 22-23-101. Based upon this provision, she asserted that the statute providing for judicial review of determinations relating to statewide initiatives and referenda conferred jurisdiction to consider her case:

---

[5] In their answer, Appellants included as an affirmative defense that the district court lacked subject matter jurisdiction to consider the case.

Any person aggrieved by any determination made under this article, by the secretary of state or by the attorney general, may bring an action in the district court of Laramie county to have the determination reviewed by filing application within thirty (30) days of the date on which notice of the determination was given.

Wyo. Stat. Ann. § 22-24-122.

[¶18] The district court, in accepting jurisdiction on this basis, concluded that there were no other alternatives for judicial review. Therefore, expanding the statute governing statewide initiatives and referenda to municipal referenda seemed appropriate. It reasoned as follows:

> The Court does not see why the plaintiff should not at a minimum be entitled to have the Court review the City Clerk's determination in this matter in the same way that the Secretary of State's determinations are reviewed as to statewide initiatives and referendums pursuant to the Wyoming Election Code.
> Section 22-24-122 provides that any person aggrieved by any determination made under the article of the statutes that apply to statewide initiatives and referendums may bring an action in the District Court of Laramie County as more specifically set forth in the statute.
> I would also refer generally to [*Thomson v. Wyoming In-Stream Flow Committee*, 651 P.2d 778 (Wyo. 1982)].
> There is no similar provision contained in the article of the statutes that applies to municipal initiatives and referendums; yet, the article on municipal initiatives and referendums appears in the Wyoming Election Code in the chapter on municipal elections, which precedes the chapter on statewide initiatives and referendums. Due process and equal protection require that the plaintiff have some ability to seek relief from or a review of the City Clerk's determination as to the petitions that were submitted in this case.
> The City Clerk's determination is functionally no different that the Secretary of State's determination on statewide initiatives or referendum petitions. The District Court is clearly the proper court to perform such a review; and by analogy and considering the policies behind venue, this Court is the proper court to perform such a review of the City of Casper Clerk's determination in this case.

6

[¶19] We must disagree with the district court's finding of jurisdiction through this avenue. Section 22-24-122 specifically states that a person aggrieved by a determination made by the "secretary of state or by the attorney general" relating to statewide initiatives and referenda "may bring an action in the district court of Laramie county to have the determination reviewed." We find the language of this statute to be clear. *Stutzman v. Office of Wyoming State Eng'r*, 2006 WY 30, ¶ 14, 130 P.3d 470, 475 (Wyo. 2006) ("Where the language is clear, we look to its ordinary and obvious meaning, are bound to the results so expressed and do not resort to rules of construction."). This Court concludes that the legislature's intent in enacting § 22-24-122 was for a very narrow purpose relating to statewide initiatives and referenda. *Id.* ("In interpreting and construing statutory language, our primary purpose is to determine the legislature's intent.").

[¶20] The level of detail that the legislature used in drafting this provision leaves no room for us to broaden its application to municipal initiatives and referendums. As this Court has often stated:

> We will not insert language into a statute that the legislature omitted. A basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them. At the same time, however, we will not interpret a statute in a way that renders any portion meaningless or in a manner producing absurd results.

*Id.*, ¶ 16, 130 P.3d at 475 (citations omitted). We must abide by our dictates of statutory interpretation, and therefore can only conclude that § 22-24-122 provides jurisdiction in the narrow circumstance of reviewing determinations made under Title 22, Chapter 24, Article 1 of the Wyoming statutes. *See Thomson*, 651 P.2d at 780.

[¶21] However, there are two other avenues for Holloway to seek judicial review of the City Clerk's interpretation of the relevant statutes and his ultimate conclusion concerning the petitions that were submitted.

[¶22] The City Clerk's decision to disqualify signatures can be considered agency action, falling under W.R.A.P. 12 and the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16-3-101 *et seq.* Rule 12.01 states:

> To the extent judicial review of administrative action by a district court is available, any person aggrieved or adversely affected in fact by a final decision of an agency in a

7

contested case, or **who is aggrieved or adversely affected in fact by any other agency action or inaction**, or who is adversely affected in fact by a rule adopted by that agency, **may obtain such review as provided in this rule**. All appeals from administrative agencies shall be governed by these rules.

W.R.A.P 12.01 (emphasis added). Holloway could have obtained judicial review by filing a petition for review in accordance with W.R.A.P. 12.[6] However, she did not file a petition for review, but instead opted to file a declaratory judgment action.[7]

[¶23] Rule 12.12 recognizes that review of agency action can also be available by way of a declaratory judgment action:

The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, **in actions for a declaratory judgment based on agency action or inaction**, in actions seeking any common law writ to compel, review or restrain agency action **shall be available by independent action notwithstanding any petition for review**.

---

[6] In administrative proceedings not conducted as trial-type adjudications or contested cases, such as those taken by the City Clerk here, the arbitrary and capricious standard of review would apply. *N. Laramie Range Found.*, ¶ 18, 290 P.3d at 1072; W.R.A.P. 12.09(a).

[7] In her complaint, Holloway sporadically mentions injunctive relief, asking the district court to compel the City Clerk to revisit the disallowed signatures and confer with her to determine validity of the signatures. The district court did not rule on, or even acknowledge, this faint aspect of Holloway's complaint, nor could it have based upon what was, and was not, included in the pleading. We have explained:

The Wyoming Rules of Civil Procedure permit "notice pleading," and pleadings are to be liberally construed to do substantial justice. However, even notice pleading requires fair notice to opposing parties of the nature of a party's claim. Liberal construction of pleadings does not excuse omission of that which is material and necessary in order to entitle one to relief.

*Excel Const., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 35, 228 P.3d 40, 49 (Wyo. 2010) (citations omitted). There is no cognizable claim for injunctive relief included in Holloway's complaint because there is a clear omission that exists which is material and necessary in order to entitle her to such relief. *See Operation Save America v. City of Jackson*, 2012 WY 51, ¶ 51, 275 P.3d 438, 455 (Wyo. 2012) (pleading seeking an injunction should state the grounds for doing so, quoting 11A Wright, et al. *Fed. Practice & Procedure* § 2949); *see also CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 8, 215 P.3d 1054, 1057 (Wyo. 2009). We consider Holloway's complaint to only seek declaratory judgment, as the insufficiently pled request for injunctive relief cannot honestly be contemplated as part of this action.

W.R.A.P. 12.12 (emphasis added).

[¶24] This Court has on several occasions examined the applicability of declaratory judgment in the context of administrative proceedings. *See, e.g., Voss v. Goodman*, 2009 WY 40, ¶ 5, 203 P.3d 415, 418 (Wyo. 2009); *Wyoming Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶¶ 13-14, 31 P.3d 1242, 1248 (Wyo. 2001); *Campbell Cnty. Sch. Dist. v. Catchpole*, 6 P.3d 1275, 1283 (Wyo. 2000); *Hirschfield v. Bd. of Cnty. Comm'rs of Cnty. of Teton*, 944 P.2d 1139, 1142 (Wyo. 1997); *Rocky Mtn. Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1166-69 (Wyo. 1982). In accord with the Uniform Declaratory Judgments Act, our previous decisions have liberally construed the availability of a declaratory judgment proceeding to consider certain issues arising from agency action. Wyo. Stat. Ann. § 1-37-114; *Hirschfield*, 944 P.2d at 1142. We have explained:

> The purpose of declaratory judgment actions is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies. Wyoming's declaratory judgment statute states that it is remedial and should be liberally construed and administered. We do not interpret it in a narrow or technical sense, and there remains the prerequisite that the party seeking declaratory relief present the court with an actual controversy. Trial judges may not dispense with the traditional rules prohibiting them from rendering advisory opinions or adjudicating hypothetical issues. An action for declaratory judgment cannot be a substitute for an appeal from administrative decisions but is available even though there is a statutory method of appeal if it concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be based.

*Voss*, ¶ 5, 203 P.3d at 418 (quoting *Hirschfield*, 944 P.2d at 1142); *see also Torres v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2004 WY 92, ¶ 6, 95 P.3d 794, 795 (Wyo. 2004).

[¶25] Because the district court erred in finding that it had jurisdiction to consider the case under Wyo. Stat. Ann. § 22-24-122, its decision was not limited to the appropriate legal issues—interpretation of statutes upon which the administrative action is, or is to be based. In addition to interpreting the controlling statutes, the decision went beyond the

9

realm of declaratory judgments by finding that the City Clerk acted arbitrarily and capriciously in rejecting certain signatures as he did.

[¶26] We conclude that the district court had jurisdiction to consider Holloway's declaratory judgment action through W.R.A.P. 12.12 and Wyo. Stat. Ann. § 1-37-101 *et seq.*[8] As a result, this Court also has jurisdiction to consider certain issues on appeal. *Wyo. Cmty. Coll. Comm'n*, ¶ 12, 31 P.3d at 1248) ("This court can have no greater jurisdiction of the subject matter than the district court."). The narrow issues of law that this Court has jurisdiction to consider fall into the category of an "interpretation of a statute upon which the administrative action is, or is to be based." *See Voss*, ¶ 6, 203 P.3d at 418.

### *Summary Judgment—Interpretation of the Municipal Referendum Statutes*

[¶27] The district court decided the matter by grant of summary judgment, which we have held "may be an appropriate resolution of a declaratory judgment action." *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals of City of Cheyenne*, 2010 WY 2, ¶ 8, 222 P.3d 158, 161 (Wyo. 2010); *see also State ex rel. Arnold v. Ommen*, 2009 WY 24, ¶ 23, 201 P.3d 1127, 1134 (Wyo. 2009) ("Summary judgment is appropriate in a declaratory judgment action so long as there are no genuine issues of material fact.").

[¶28] We review a grant of summary judgment entered in response to a declaratory judgment action through our usual standard for review of summary judgments. *Arnold*, ¶ 13, 201 P.3d at 1132; *Voss*, ¶ 9, 203 P.3d at 419. Our review of a district court's summary judgment ruling is *de novo*, using the same materials and following the same standards as the district court. *Arnold*, ¶ 13, 201 P.3d at 1132; W.R.C.P. 56(c). No deference is accorded to the district court on issues of law, and we may affirm the summary judgment on any legal grounds appearing in the record. *Voss*, ¶ 9, 203 P.3d at 419. "The summary judgment can be sustained only when no genuine issues of material

---

[8] We have examined the Uniform Declaratory Judgments Act, which defines the rights that may be subject to declaration under the act and the parties who may seek a declaration of their rights:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo. Stat. Ann. § 1-37-103. Thus, "in order for a court to have jurisdiction over a declaratory judgment action, the 'right' to be declared must fall within the scope of the act and the plaintiff must be an 'interested' person." *See William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶¶ 11-12, 206 P.3d 722, 727 (Wyo. 2009) (applying four-part test for determining whether there is a justiciable controversy); *see also Voss*, ¶ 7, 203 P.3d at 418-19 (same). We are convinced Holloway's case meets these requirements.

fact are present and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Wyo. Cmty. Coll. Comm'n,* ¶ 11, 31 P.3d at 1247).

[¶29] The parties agree, and the district court's ruling confirms, that there are no questions of material fact in this case. Our review is confined to questions of law; namely the district court's interpretation of § 22-23-1005, which states:

> ### § 22-23-1005. Ordinance adopted by governing body subject to referendum vote.
>
> An ordinance adopted by a municipal governing body shall be subject to a referendum vote if a petition signed by ten percent (10%) of the qualified electors registered in the city or town is filed with the municipal clerk not later than twenty (20) days after the ordinance is first published after adoption as provided by law. To be counted the electors shall be registered voters when the completed petition is submitted for verification. The referendum petition shall set forth the ordinance in full and shall contain the signatures and residence addresses of persons signing the petition.

Wyo. Stat. Ann. § 22-23-1005.

[¶30] Guided by our rules of statutory interpretation, *see Aland v. Mead,* 2014 WY 83, ¶ 11, 327 P.3d 752, 758-59 (Wyo. 2014), we find the legislature's intent is evident when this statute is construed *in pari materia.* As the district court pointed out, the linchpin in this case can best be said to be who was, or was not, a qualified elector registered to vote in the City of Casper at the time the municipal referendum petitions were submitted to the City Clerk. Ingrained is the issue of whether a signatory remains a qualified elector registered to vote when his or her residence address within the City of Casper as stated on the petition is different than the one on the voter registration list.

[¶31] We begin our analysis by reviewing the definitions of certain terms provided by the legislature. Several of the terms contained in § 22-23-1005 are defined by § 22-1-102, which also defines additional ones relevant to our review:

- "Qualified elector" includes every citizen of the United States who is a bona fide resident of Wyoming, has registered to vote and will be at least eighteen (18) years of age on the day of the election at which he may offer to vote;

- "Registration" is the entry and verification of the name and voter information of a qualified elector on the official registry list, as provided in Wyo. Stat. Ann. §§ 22-3-104(f) and 22-3-108;

11

- "Registry list" is the list by precinct of the names, addresses, party affiliations and precinct and district numbers of the registered electors in the county prepared by the secretary of state or county clerks for distribution as provided in Wyo. Stat. Ann. § 22-2-113;

- "Residence" is the place of a person's actual habitation. The construction of this term shall be governed by the following rules: (A) Residence is the place where a person has a current habitation and to which, whenever he is absent, he has the intention of returning.

Wyo. Stat. Ann. § 22-1-102(xxvi), (xxvii), (xxix), (xxx); *see Thomson*, 651 P.2d at 789-91 (finding that the term "qualified voters" within Art. 3, § 52(c), of the Wyoming Constitution governing initiative and referendum is synonymous with term "qualified registered voters" within related statutory provisions).

[¶32] With these definitions in mind, we turn to how a qualified elector becomes registered to vote. Wyo. Stat. Ann. § 22-3-104 provides in pertinent part:

> (d) An applicant may only register to vote in person or by mail at which time he shall provide the information required by W.S. 22-3-103(a) and sign the registration oath as required by W.S. 22-3-103(b).
>
> \* \* \*
>
> (f) A person shall be registered to vote as follows:
>
> \* \* \*
>
> (ii) Registration . . . is effective:
>
> (A) At the polls for the purpose of voting. Upon verification of the information, the voter shall continue to be registered. Upon failure of verification, the voter's registration shall be revoked in accordance with W. S. 22-3-105;
> (B) For registration, other than at the polls, after the voter registration information has been entered onto the voter registration system and verified.
>
> (g) On election day, applicants attempting to register who lack the proof required under this section shall be offered

12

provisional ballots in accordance with W.S. 22-15-105 and permitted until the close of business on the day following the election to present documentation to the county clerk establishing their eligibility to register and to vote in the precinct.

(h) An applicant may register to vote in person:

(i) In his proper polling place at any election specified in W.S. 22-2-101(a)(i) through (viii); or
(ii) In the office of the county clerk or city clerk in the principal office building of the county or city in the presence of the registry agent.

Wyo. Stat. Ann. § 22-3-104 (LexisNexis 2013).

[¶33] The information that must be provided under oath and signed by an applicant includes, *inter alia*, his or her full name, current residence address, date of birth, acceptable identification as defined by statute, and Wyoming driver's license number (or other type of information as set forth in the statute if the elector has no Wyoming driver's license). Wyo. Stat. Ann. § 22-3-103(a). Once this information is provided, the official registry list "shall contain at least the following information as to each registered elector": full name; residence by street number and name, if any; voting district and precinct numbers; party affiliation, if declared; house and senate numbers; date of birth; and the electors driver's license number (or other type of information as set forth in the statute if the elector has no Wyoming driver's license). Wyo. Stat. Ann. § 22-3-108.

[¶34] Having reviewed how a person becomes registered and what information is then reflected on the registry list, let us turn to how a person becomes unregistered to vote:

- The county clerk can investigate the qualifications of any voter registration, when he has reasonable cause to believe that the voter may be unqualified. Wyo. Stat. Ann. § 22-3-105(a). If the investigation reveals a person is not qualified to be registered, the county clerk must strike the name from the voter registration list. *Id.* Among the criteria that can be used in determining the qualifications of a person to be registered is the location of dwelling of registrant and family. *Id.* at (b)(i). If the county clerk denies an applicant's registration, he must give the person immediate written notice by certified return receipt mail. *Id.* at (c). A person "who is denied registration has the right to appeal to a circuit court within the county or to the district court within five (5) days of the date of the notification." *Id.* at (d).

13

- "If a voter registration applicant affirms that he is registered in another county or state, the registry agent shall require that the applicant make a written withdrawal of voter registration from another county or state on the Wyoming registration application." Wyo. Stat. Ann. § 22-3-106.

- "A registered elector's registration shall be cancelled for any one (1) of the following reasons: (i) Failure to vote in any general election; (ii) Death; (iii) **Removal of residence from the county or state more than thirty (30) days prior to an election**; (iv) Disqualification to vote; (v) Receipt of notification that the elector has registered to vote in another jurisdiction;(vi) Upon written request of the elector." Wyo. Stat. Ann. § 22-3-115(a) (emphasis added). Upon receiving information that a registration should be cancelled, the county clerk "shall mail a notice of intent to cancel to the elector at his address on the registry list stating the reason for cancellation." Wyo. Stat. Ann. § 22-3-116. The notice is required to state that "cancellation shall occur within twenty (20) days unless the elector asks that his name remain on the registry list." *Id.*

[¶35]  With a firm hold on who is a qualified elector registered to vote under § 22-23-1005 and when registration ceases, the last leg of our analysis necessarily focuses on Appellants' contention that "an individual who has moved and has not notified the County Clerk of the change of address is no longer a 'qualified elector' registered to vote in an election from the time the [sic] he moves until the time he reaffirms, under oath, that he resides in the appropriate precinct or political sub-division for any given election." To support their claim, Appellants rely on Wyo. Stat. Ann. § 22-3-114, which provides:

> A registered elector who changes his name or changes his residence from one address to another within the same county shall notify the county clerk of the change, including in the notification the name, address, precinct and social security number (optional) under which registered and the nature of the change.

[¶36]  We disagree with Appellants' disputation. While § 22-3-114 requires a registered elector to notify the county clerk of a change in residence from one address to another within the same county, we do not believe that the legislature intended that omission to cause an elector to become automatically unregistered. Indeed, as we have already set forth, § 22-3-115(a) provides the criteria for when registration can be cancelled; namely, "[r]emoval of residence from the county or state more than thirty (30) days prior to an election." Furthermore, registration cannot be cancelled automatically. The applicable statute provides that the county clerk "shall mail a notice of intent to cancel to the elector at his address on the registry list stating the reason for cancellation." Wyo. Stat. Ann. § 22-3-116. The notice must inform the elector that cancellation will "occur within twenty (20) days unless the elector asks that his name remain on the registry list." *Id.*

14

[¶37] Accepting Appellants' position would render these statutes meaningless. *See N. Laramie Range Found.*, ¶ 76, 290 P.3d at 1088 ("A basic tenet of statutory construction is that we do not interpret statutes in such a way to render any portion meaningless."); *McTiernan v. Jellis*, 2013 WY 151, ¶ 20, 316 P.3d 1153, 1160 (Wyo. 2013) ("Statutes must be construed so that no portion is rendered meaningless. Interpretation should not produce an absurd result.") (citation and quotation marks omitted). The district court interpreted these statutes as we do, concluding that "one could move lawfully to a different address within the city of Casper without updating their address and still legally be a qualified elector registered in the city of Casper."[9] We therefore affirm that portion of the district court's ruling interpreting § 22-23-1005 and related statutes concerning who is a qualified elector registered in a city for purposes of a municipal ordinance referendum petition.

### City Clerk's Rejection of Signatures Based upon Residence Address

[¶38] Appellants contend that the City Clerk's duty under § 22-23-1006[10] to determine the petitions' legal sufficiency allowed him to automatically reject signatures on the municipal referendum petitions when the signatory's address stated on the petition was different than that on the county clerk's voter registration list. However, this argument is based upon a faulty interpretation of what it means to be a qualified elector registered in the City of Casper. As explained *supra*, one can lawfully move to a different address within the city without updating his or her address and still be a legally qualified elector registered in the city. Consequently, Appellants' concluding contention necessarily fails. *See State ex rel. Sajo v. Paulus*, 688 P.2d 367, 376 (Or. 1984) ("The 55 signatures should not have been invalidated for the reason that the address on the petition was not the same as the address on the registration card.").

### Reasonable and Objective Standard

[¶39] The remaining issue is what steps the City Clerk must take to conduct an objective review of the signatures on the municipal referendum petition that is both reasonable and efficient without automatically discounting a signatory because the Casper address listed on the petition does not match the one on the voter registration list. Unfortunately, we

---

[9] Under Appellants' position, additional signors could be erroneously excluded under the following scenario: "[A] voter signing a petition may be at that time stating his or her voting residence with full accuracy as it then appears on the registration records but may move to a new address and change his or her registration before the petition is presented to the county clerk for checking." 42 Am. Jur. 2d *Initiative and Referendum* § 27 (updated 2015).

[10] Wyo. Stat. Ann. § 22-23-1006 states that "[t]he municipal clerk shall determine if the referendum petition meets the requirements of W.S. 22-23-1005, and if he finds a petition legally sufficient, he shall certify it to the governing body who shall suspend the ordinance."

cannot resolve that issue in this appeal because it is outside the Court's jurisdiction for review of declaratory judgments of administrative action.

[¶40] We note that initiatives and referenda are important instruments of democracy that must be delicately balanced with statutory restrictions imposed upon them to prevent fraud and abuse and to promote a timely and reliable review process. As this Court has previously explained, "[t]he purpose of statutory controls with respect to initiative and referendum is to safeguard and facilitate the use of the initiative and referendum for the benefit of the people of the state by discouraging fraud and abuse and minimizing mistakes that might occur in the use of the right, as well as facilitating the checking of petitions." *Thomson*, 651 P.2d at 790; *see also* 42 Am. Jur. 2d *Initiative and Referendum* § 16. As far as we can tell, all the petition in the instant case may have lacked was another column for signors to put their previous address as reflected on the voter registration list, if they had moved within Casper and had not yet provided an update as required under § 22-3-114. *See Thomson*, 651 P.2d at 789. The City Clerk would then have had both the signor's current residence address and a previous address that may be on the voter registration list.

[¶41] Since that ship has sailed, we are confident that the City Clerk can strike the right balance and tailor an appropriate process for review of municipal referenda, perhaps finding inspiration in Wyo. Stat. Ann. § 22-3-116. That is, the City Clerk could allow twenty days for the Committee to provide some sort of confirmation that the 67 signatories with different addresses on the petition actually lived at the previous address identified on the voter registration list and have not moved out of the city limits. [11] If the Committee does not meet its burden by presenting confirming information within twenty days, the City Clerk may reject those signatures and not count them under § 22-23-1006. Of course this is only one path, and the City Clerk can devise a process that he thinks would be best suited for the limited situation concerning the 67 signatories' addresses. If Appellee is not satisfied with this process, she may certainly seek relief through the Administrative Procedures Act or other proper avenues.

## CONCLUSION

[¶42] Because this matter is one for declaratory judgment arising from agency interpretation and application of certain statutes, subject matter jurisdiction stems from W.R.A.P. 12.12 and the Uniform Declaratory Judgments Act, Wyo. Stat. Ann. § 1-37-101 *et seq*.

---

[11] Other types of rejected signatures are not subject to such a process in this case. An illegible signature, for instance, "is the same as a blank line, not entitled to recognition and counting." *Thomson*, 651 P.2d at 786. If it is impossible to decipher a signature, it is a nullity. *Id.*

16

[¶43] Pursuant to Wyo. Stat. Ann. § 22-23-1005, a signatory to a municipal referendum petition can move lawfully to a different address within a city without updating his or her address and still legally be a qualified elector registered in that city. Taking this interpretation to its logical conclusion, in performing his duties under § 22-23-1006, the City Clerk is not statutorily permitted to automatically reject a signature on the municipal referendum petition because the Casper address on the petition is different than the Casper address on the voter registration list. The portion of the district court's judgment concerning the interpretation of §§ 22-23-1005 and 1006 is affirmed.

[¶44] Because the district court erred in finding that it had jurisdiction to consider the case under Wyo. Stat. Ann. § 22-24-122, its decision was not limited to issues which could be resolved by statutory interpretation. In addition to correctly interpreting the controlling statutes, it went beyond the realm of declaratory judgment by finding the City Clerk acted arbitrarily and capriciously in conducting the petition review as he did. That portion of the district court's ruling is reversed because it did not have jurisdiction to decide that issue.

[¶45] Affirmed in part and reversed in part.