# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 125

OCTOBER TERM, A.D. 2016

December 23, 2016

CHEYENNE NEWSPAPERS, INC., d/b/a
The Wyoming Tribune-Eagle, a Wyoming
corporation,

Appellant
(Plaintiff),

v.                                                             S-16-0103

CITY OF CHEYENNE, WYOMING,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
>    Bruce T. Moats, Law Office of Bruce T. Moats, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
>    John H. Ridge, Deputy City Attorney, Alessandra K. McCoy, Assistant City Attorney, and Benjamin J. Rowland, Assistant City Attorney, City of Cheyenne, City Attorney's Office, Cheyenne, Wyoming.  Argument by Mr. Rowland.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   The Cheyenne City Council created the Employee Investment Study Implementation Team (EIS Team) to consider alternative means of implementing the recommendations of a staffing and compensation study conducted by the City's contractor.  The City refused the newspaper's request that the EIS Team meetings be open to the public, and the newspaper sued the City, requesting an order declaring that the EIS Team must comply with the Wyoming Public Meetings Act.  The district court entered summary judgment in favor of the City, holding that the EIS Team was not subject to the Act.  We affirm.

## *ISSUE*

[¶2]   Cheyenne Newspapers, Inc. (Tribune-Eagle) submits three issues on appeal, which we narrow to the following question: Is the EIS Team an "agency" subject to the Wyoming Public Meetings Act?

## *FACTS*

[¶3]   In 2012, the City of Cheyenne (City) hired Mercer Group, Inc. to conduct an employee investment study to determine appropriate staffing levels and pay ranges for various departments and classifications of City employees.  In anticipation of receiving the Compensation and Classification Study (Mercer Study), the City Council passed Resolution No. 5508, which created the EIS Team.  The full text of Resolution No. 5508 reads:

> WHEREAS, the City of Cheyenne engaged the Mercer Group, LLC, to conduct an employee investment study to determine appropriate staffing levels and pay ranges for the various departments and classifications of City employees; and
>
> WHEREAS, it is anticipated that the Mercer Group, LLC, will complete the employee investment study prior to the end of July 2013; and
>
> WHEREAS, various members of the Governing Body of the City of Cheyenne have expressed an interest in serving on a committee to consider alternative means of implementing the recommendations of the Mercer Group following completion of the employee investment study; and

1

WHEREAS, it would be beneficial if representatives of employee groups covered by the employee investment study, and various members of the City's administrative staff also serve on the committee; and

WHEREAS, a final plan must be submitted to the Governing Body for approval no later than January 1, 2014, and implementation process must begin with the Fiscal Year 2015 Budget.

NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY OF THE CITY OF CHEYENNE, WYOMING, that the "Employee Investment Study Implementation Team" is hereby created; that said team be composed of the following individuals (in alphabetical order): Sean Allen [City Council member], Jim Brown [City Council member], Bill Gonzales [City Public Works employee], Lois Huff [City Treasurer], Rick Kaysen [City Mayor], Tim Rumpf [City Police Department employee], Jason Sanchez [City Parks & Recreation employee], Theresa Snyder [City Clerk's office employee], Sara Vasquez [City Treasurer's office employee], and Rich Wiederspahn [City Human Resources Director], and that said Team be directed to ***consider the recommendations of the employee investment study and alternative methods of implementing those recommendations which are approved by the Governing Body of the City of Cheyenne***.

(Emphasis added.)

[¶4]    Upon completion of the Mercer Study, the City Council passed Resolution No. 5535, which acknowledged receipt of the Mercer Study[1] and referred it to the EIS Team. Resolution No. 5535 reads in part:

NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY OF THE CITY OF CHEYENNE, WYOMING, that the Governing Body acknowledges receipt of "The City of Cheyenne, Wyoming, Compensation and Classification Study, Final Report," dated October 1, 2013, attached hereto as Exhibit A.

---

[1] The Mercer Study was made available for the public to view on the City's webpage.

BE IT FURTHER RESOLVED that "The City of Cheyenne, Wyoming, Compensation and Classification Study, Final Report," dated October 1, 2013, is hereby referred to the "Employee Investment Study Implementation Team" to consider the recommendations of said ***Compensation and Classification Study and to prepare a plan containing alternative means of implementing all or some of the recommendations of said study, together with such other recommendations as shall be forthcoming upon final completion of the employee investment study,*** said implementation plan to be presented to the Governing Body no later than February 1, 2014, or such other date as may be determined by the Governing Body.

(Emphasis added.)

[¶5]  The City conceded that, if it proceeded to implement changes to City employee classification and compensation pursuant to the EIS Team's recommendations, it would be required to do so by adopting an ordinance. "An ordinance is a legislative act prescribing general, uniform and permanent rules of conduct or government, to continue in force until the ordinance is repealed." Cheyenne, Wyo., Code § 2.04.150 (2016). The public would then be afforded its right to public meetings through the ordinance process. Wyo. Stat. Ann. § 15-1-115(c) (LexisNexis 2015) ("Every ordinance shall be publicly read on three (3) different days. Public reading may be by title only. At least ten (10) days shall elapse between the introduction and final passage of every ordinance."); *see also* Cheyenne, Wyo., Code § 2.04.160(B) (2016) ("An ordinance, resolution, approval of a bid for public improvements, contracts or other matters brought before the governing body shall be referred to a city council standing committee prior to final action.").

[¶6]  Before the EIS Team met, the Tribune-Eagle petitioned the district court for declaratory judgment that the EIS Team must conduct its meetings in public as required by the Wyoming Public Meetings Act (the Act), Wyo. Stat. Ann. §§ 16-4-401 through 16-4-408 (LexisNexis 2015), and it sought an injunction prohibiting the committee from meeting unless it complied with the Act. The City admitted that "it has taken the position that the [EIS Team] is not subject to the provision of W.S. §§ 16-4-401 through 16-4-408 pertaining to open meetings," it agreed that the EIS Team would not meet until the litigation was resolved, and the district court did not rule on the request for a preliminary injunction.

[¶7]  The City filed a motion for summary judgment, arguing that the EIS Team was not an "agency" and not subject to the Act. The district court allowed the parties to conduct additional discovery prior to the hearing on the motion. The Tribune-Eagle deposed

Councilman Jim Brown and Mayor Richard Kaysen, posing several questions relating to the future actions of the EIS Team, to which the City objected, largely on the grounds that the testimony was speculative. The Tribune-Eagle attached both deposition transcripts to its response in opposition to the City's motion for summary judgment. The City objected to the Tribune-Eagle's use of the depositions, arguing that it timely objected to portions of the testimony that were speculative and called for legal conclusions.

[¶8] The district court granted the City's motion for summary judgment. Without relying on the deposition transcripts, it held that the EIS Team was not an "agency" as defined by the Act, and therefore the EIS Team was not subject to the open meetings requirements of the Act.

[¶9] The Tribune-Eagle timely filed a notice of appeal.

## STANDARD OF REVIEW

[¶10] Summary judgment can be an appropriate resolution of a declaratory judgment action, and we invoke the usual standard for review. *Continental Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, ¶ 29, 275 P.3d 769, 778 (Wyo. 2016). We review a grant of summary judgment deciding a question of law de novo. *Id*. We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016).

## DISCUSSION

### Is the EIS Team an "agency" subject to the Wyoming Public Meetings Act?

[¶11] Our task is to determine whether the legislature intended the definition of "agency," as used in the Act, to encompass the EIS Team, a question of statutory interpretation. When interpreting statutes, our goal is to determine the legislature's intent, in compliance with the purpose and policy behind the enactment. *Clark v. State ex rel. Dep't of Workforce Servs.*, 2016 WY 89, ¶ 13, 378 P.3d 310, 314 (Wyo. 2016). It is well settled that:

> We [] construe each statutory provision *in pari materia*,
> giving effect to every word, clause, and sentence according to
> their arrangement and connection. To ascertain the meaning
> of a given law, we also consider all statutes relating to the

4

same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 22, 357 P.3d 1118, 1126 (Wyo. 2015) (citations omitted). "If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous." *Fontaine v. Bd. of Cty. Comm'rs of Park Cty.*, 4 P.3d 890, 894 (Wyo. 2000) (citations omitted).

[¶12] In interpreting the Act, we are directed by its purpose of maintaining open and accountable government. Open meetings laws serve a very clear purpose -- government transparency.[2] The legislature recognized this purpose in the preamble of the Act: "The agencies of Wyoming exist to conduct public business. Certain deliberations and actions shall be taken openly as provided in this act." Wyo. Stat. Ann. § 16-4-401. Section 403(a) effectuates that purpose:

All meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided. No action of a governing body of an agency shall be taken except during a public meeting following notice of the meeting in accordance with this act. Action taken at a meeting not in conformity with this act is null and void and not merely voidable.

Wyo. Stat. Ann. § 16-4-403.[3]

---

[2] "Deeply imbedded in the principles of democratic government is the notion that the processes of government should be open to public scrutiny." Charles N. Davis et. al., *Sunshine Laws and Judicial Discretion: A Proposal for Reform of State Sunshine Law Enforcement Provisions*, 28 Urb. Law. 41, at 41 (1996).

[3] No "action" is required in order for a meeting to occur, as a "meeting" under the Act can be for the "expressed purpose of discussion, deliberation, presentation of information or taking action regarding public business[.]" Wyo. Stat. Ann. § 16-4-402(a)(iii). The parties have not raised, and we do not address, how another element of the definition of "meeting," the "assembly of at least a quorum of the governing body of an agency," *id.*, could be applied to the EIS Team.

[¶13] The rationale behind the Act's open-government objective is the same as the purpose of the Wyoming Public Records Act -- to maintain an "open and accountable government." *Aland v. Mead*, 2014 WY 83, ¶¶ 10-13, 327 P.3d 752, 758-59 (Wyo. 2014) (holding that to implement the goal of the WPRA disclosure generally prevails over secrecy, the WPRA will be afforded a liberal interpretation, and exceptions will be construed narrowly). We will likewise afford the Act a liberal interpretation in favor of open decision making, while construing its exceptions narrowly.

> By a liberal interpretation, it is only meant that words should not be forced out of their natural meaning and should receive a fair and reasonable construction so as to obtain the objects for which a statute is designed. Liberal construction does not require that words be forced out of their natural meaning.

*Allsop v. Cheyenne Newspapers, Inc.*, 2002 WY 22, ¶ 10, n.2, 39 P.3d 1092, 1095 n.2 (Wyo. 2002) (citations omitted).

[¶14] The legislature also recognized that for the government to effectively operate, it must strike a balance between openness and efficiency.[4] The legislature's intent to limit the reach of the Act is further evidenced in its exclusion of the "day-to-day administrative activities" of agency officers and employees from the meeting notice requirement. Wyo. Stat. Ann. § 16-4-404(e). Because it would be cumbersome to impose open meeting requirements on every administrative activity, the legislature limited the Act to "meetings of the governing body of an agency." Wyo. Stat. Ann. § 16-4-403.

[¶15] The Act defines "agency" as

> any authority, bureau, board, commission, committee, or subagency of the state, a county, a municipality or other political subdivision which is created by or pursuant to the Wyoming constitution, statute or ordinance . . . .

Wyo. Stat. Ann. § 16-4-402(a)(ii). We must therefore determine first, whether the EIS Team is an "authority, bureau, board, commission, committee, or subagency" of the City, and second, whether it was "created by or pursuant to the Wyoming constitution, statute or ordinance." Like the district court, we will not rely on the deposition testimony

---

[4] The Open Meetings Law, passed in 1976 after the crisis of confidence in American politics occasioned by Watergate, was intended—as its very name suggests—to open the decision-making process of elected officials to the public while at the same time protecting the ability of the government to carry out its responsibilities.

*Gordon v. Vill. of Monticello, Inc.*, 661 N.E.2d 691, 693 (1995) (internal citations omitted).

regarding how the EIS Team might have functioned; rather, we base our decision solely on the applicable resolutions, ordinances, and statutes.[5]

## A. Is the EIS Team an "authority, bureau, board, commission, committee, or subagency" of the City?

[¶16] The Tribune-Eagle argues that the EIS Team is a "committee" as the term is used in Wyo. Stat. Ann. § 16-4-402(a)(ii). The City contends that the EIS Team is not an "agency;" rather, it is an "impermanent, advisory group that exists and operates exclusively under the auspices of the governing body," citing *Worker's Comp. Claim of Decker v. State ex rel. Wyo. Med. Comm'n*, 2008 WY 100, 191 P.3d 105 (Wyo. 2008).

[¶17] In *Decker*, we considered the transitory and impermanent nature of the medical commission hearing panels to be one factor in determining whether they were agencies under the Act. 2008 WY 100, ¶¶ 17-18, 191 P.3d at 118-19. But impermanence is not a dispositive factor for determining whether a group is a "committee." A committee is a "subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action." Black's Law Dictionary 329 (10th ed. 2014). Here, Resolution No. 5508 refers to the EIS Team as a "committee," and it is apparent the City Council referred business for consideration to the EIS Team, whose charge is "to consider the recommendations of said Compensation and Classification Study and to prepare a plan containing alternative means of implementing all or some of the recommendations of said study . . . ." Based on these facts, and as the district court found, the EIS Team is a "committee" under the Act.

## B. Was the EIS Team "created by or pursuant to Wyoming constitution, statute or ordinance"?

[¶18] We next determine whether the EIS Team was "created by or pursuant to Wyoming constitution, statute or ordinance[.]" Wyo. Stat. Ann. § 16-4-402(a)(ii). The City created the EIS Team by resolution, "an expression of administrative policy which typically deals with matters of a temporary or special nature." Cheyenne, Wyo., Code, *supra*, § 2.04.150. *See also* 5 McQuillin Mun. Corp. § 15:2 (3d ed. updated July 2016) ("[A] resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed.") The Tribune-Eagle disputes that a resolution was the appropriate method for establishing this committee, arguing that the City labeled its formal action as a "resolution" to withdraw the consideration and deliberation on controversial issues from public view. We find that the EIS Team's charge is to deal with matters of temporary and special nature, and thus it was appropriately created by resolution.

---

[5] Nothing in the deposition testimony created an issue of material fact.

[¶19]   The City argues, reading the Act as a whole and according to its purpose, that any committee created by a formal act of the governing body must comply with the Act. However, the legislature specified that an agency is a committee "created by or pursuant to Wyoming constitution, statute or ordinance . . . ." Wyo. Stat. Ann. § 16-4-402(a)(ii). It left out "resolution," and

> [w]e will not insert language into a statute that the legislature omitted.   A basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them.

*City of Casper v. Holloway*, 2015 WY 93, ¶ 20, 354 P.3d 65, 71 (Wyo. 2015) (citations omitted).   A committee created by resolution is the kind of impermanent body that we found was not an "agency" in *Decker*, 2008 WY 100, ¶¶ 17-18, 191 P.3d at 118-19.

[¶20]   The Tribune-Eagle argues that even if the committee was not "created by" the Wyoming constitution, statute or ordinance, it is still subject to the Act because it was "indirectly created," "pursuant to" Wyo. Stat. Ann. § 15-1-103(a)(viii), which grants the City statutory authority to set and pay employee salaries.[6]   The Tribune-Eagle's definition of "pursuant to" as encompassing anything that is within the City's power would obliterate any limits to the reach of the Act and defeat the balance sought by the legislature.   We hold that "pursuant to" has a more restrictive interpretation, "equivalent to 'in conformity with' and imply[ing] that what is done is in accordance with an instruction or direction." *Fabianich v. Hart*, 31 A.2d 881, 883 (D.C. 1943).

[¶21] The housing authority established by the Teton County Commissioners in *Gronberg v. Teton County Housing Authority*, 2011 WY 13, 247 P.3d 35 (Wyo. 2011), is an example of a body created in accordance with statutory instruction or direction. There, the "TCHA [was] a housing authority established by the Teton County Commissioners pursuant to Wyo. Stat. Ann. §§ 15-10-101 through 117, [] which g[ave] counties and municipalities in Wyoming the authority to create 'housing projects.'" *Id.* at ¶ 4, 247 P.3d at 38.   The statute authorized the county to "establish a housing authority **pursuant to** W.S. 15-10-116 and elect to have these powers exercised by it." Wyo. Stat. Ann. § 15-10-115(a) (LexisNexis 2015) (emphasis added).   Section 116 provided very specific procedures for the composition and exercise of power of a housing authority, and

---

[6]
        (a)   The governing bodies of all cities and towns may:
    . . . .
        (viii) Appropriate money by ordinance only and pay all necessary expenses, including supplies, salaries of employees and debts.

Wyo. Stat. Ann. § 15-1-103(a)(viii) (LexisNexis 2015).

thus there was no dispute that the TCHA was established pursuant to statute. *Gronberg*, 2011 WY 13, ¶ 4, 247 P.3d at 38. There are no such specific requirements here.

[¶22] Wyo. Stat. Ann. § 15-1-103(a)(viii) only authorizes the City to pay its employees; it does not mention how such salaries are to be determined, and it does not instruct or direct the creation of a committee such as the EIS Team, unlike the statutes authorizing housing authorities in *Gronberg*. The EIS Team was not created "pursuant to" Wyoming constitution, statute, or ordinance, and it is therefore not subject to the open meeting requirements of the Act.

[¶23] We are cognizant of the concern that an agency might impermissibly attempt to delegate its authority to subunits of its individual members and thereby attempt to avoid the requirements of the Act. *See IDS Properties, Inc. v. Town of Palm Beach*, 279 So.2d 353, 359 (Fla. Dist. Ct. App. 1973), *approved and remanded sub nom. Town of Palm Beach v. Gradison*, 296 So.2d 473 (Fla. 1974) ("[A] public body cannot escape the application of the Sunshine Law by undertaking to delegate the conduct of public business through an alter ego."); *see also Wood v. Marston*, 442 So.2d 934, 940 (Fla. 1983) ("The statute should be construed so as to frustrate all evasive devices."). However, we find no indication in the record that such evasive activity occurred here. The EIS Team was appropriately created by resolution and not ordinance. The EIS Team was comprised of members of various stakeholder groups, including some city council members. The EIS Team's mandate, as set forth in the two resolutions, was to recommend alternatives which the City Council would then act upon following a series of public meetings. The EIS Team's function is of a special and temporary character.

## *CONCLUSION*

[¶24] Although the EIS was a committee, it was not created pursuant to Wyoming constitution, statute, or ordinance. Therefore, the EIS Team is not subject to the Act. Affirmed.