# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 55

APRIL TERM, A.D. 2017

May 15, 2017

CLARE SIKORA,

Appellant
(Plaintiff),

v.

S-16-0222

CITY OF RAWLINS,

Appellee
(Defendant).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*
> Nancy D. Mullin and Gay Woodhouse of Woodhouse Roden Nethercott, LLC, Cheyenne, WY. Argument by Ms. Woodhouse.

*Representing Appellee:*
> Kylie M. Rangitsch and Thomas A. Thompson of MacPherson, Kelly & Thompson, LLC, Rawlins, WY. Argument by Mr. Thompson.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[1]     Clare Sikora filed a declaratory judgment action against the City of Rawlins challenging the City's issuance of a building permit to her next door neighbors, Jared and Kasandra Ramsey.  The district court ruled in favor of the City, finding: 1) Ms. Sikora failed to exhaust her administrative remedies; 2) Ms. Sikora failed to join indispensible parties (the Ramseys) in the litigation; and 3) the Rawlins Municipal Code allows for the type of construction undertaken by the Ramseys.  We affirm.

## ISSUES

[¶2]    Ms. Sikora does not challenge the district court's finding that the Ramseys were indispensible parties to this litigation.  Her challenge is to the court's other two rulings, and she frames her issues concerning those rulings as follows:

> I.      The district court erred, as a matter of law, in granting summary judgment by concluding the newly constructed building retained its grandfathered-in status.
> II.     The district court erred in finding that Appellant failed to exhaust her administrative remedies because the time period triggering Appellant's right to appeal a city staff decision is uncertain.

## FACTS

[¶3]    Jared and Kasandra Ramsey own real property at 410 10th Street in Rawlins, Wyoming (the 410 property).  The 410 property is located in a commercial zone and zoned C-2, which means it may be used for, among multiple other purposes, a parking structure/garage.  Clare Sikora owns a home next door to the 410 property and resides there with her adult son, Gene Sikora.[1]

[¶4]    When the Ramseys purchased the 410 property in June 2014, the only structure on the property was a large dilapidated garage that had been cited on multiple occasions for building code violations related to its dangerous condition.  The Ramseys purchased the 410 property, which was just two blocks from their primary residence, intending to improve the existing garage and use it to store personal belongings such as their four-wheelers, snow machines, and camper.

---

[1] Ms. Sikora is part-time Rawlins resident.  She resides in her home next door to the 410 property from the end of May to the end of September or October, and spends the other months in Houston, Texas. Gene Sikora lives in the Rawlins home year round.

1

[¶5]     Although the garage that existed on the 410 property when the Ramseys purchased the property was an allowed use of the property, the garage was not situated in compliance with setback requirements that had been enacted by ordinance in 1989. Because the existing garage was in place before the setback requirements were enacted, however, it was not considered a nonconforming structure under the Rawlins Municipal Code. In other words, the existing garage was a grandfathered structure.

[¶6]     Because the existing garage was a grandfathered structure, the Ramseys consulted with Rawlins officials to determine whether and how they could replace the garage. In a meeting with DeShann Gordon, a Rawlins building inspector, and Ms. Gordon's supervisor, Adam Mendenhall, Mr. Mendenhall advised the Ramseys that if they replaced the existing building one wall at a time, followed by the roof, and kept the new building within the existing building's footprint, the new building would have the same grandfathered status as the existing building. In accordance with the City's instructions, the Ramseys applied for a building permit to replace the existing building's roof. The City issued that building permit on September 11, 2014, but site preparation and winter conditions delayed the Ramseys' construction until May of 2015.

[¶7]     When the Ramseys finally began construction in May 2015, DeShann Gordon visited the site to inspect the work being done. At the time of Ms. Gordon's inspection, the Ramseys were proceeding with the reconstruction of the garage in a piecemeal fashion and had removed the roof and one wall. In Ms. Gordon's view, this approach created safety concerns, and because Ms. Gordon had never agreed that the piecemeal construction should have been a condition to maintaining the building's grandfathered status, and Adam Mendenhall was no longer with the City, Ms. Gordon discussed the situation with interim city manager, Scott Hannum. Mr. Hannum agreed that the piecemeal construction was not required and that as long as any new structure was kept within the existing structure's footprint, the structure would remain grandfathered.

[¶8]     Ms. Gordon thereafter directed the Ramseys to stop the piecemeal construction and to proceed with a full demolition and replacement of the existing structure. The Ramseys then, on May 21, 2015, submitted a building permit application for the demolition work, and the demolition permit issued that same day. On June 2, 2015, after the demolition work was complete, the City issued the Ramseys a "New Construction" building permit for construction of the new garage. The Ramseys constructed the new garage within the same footprint as the old structure, and the completed structure passed final inspection on October 16, 2015.

[¶9]     During the Ramseys' demolition of the old garage and construction of the new garage, Gene Sikora contacted DeShann Gordon several times with complaints concerning the project. Regarding construction of the new garage, Mr. Sikora complained that the new structure did not comply with current setback requirements. Ms. Gordon informed him that she had approved the new garage as a grandfathered structure

subject to the requirement that the garage be built within the same footprint as the garage that had been removed. Ms. Gordon further informed Mr. Sikora that if he disagreed with her decision, he could take those concerns to the Board of Adjustment, the city council, or to the interim city manager, Scott Hannum.

[¶10] Clare Sikora did not seek administrative review of the City's approval of the Ramseys' new construction. Instead, on September 4, 2015, Ms. Sikora filed a declaratory judgment complaint against the City of Rawlins, followed by an amended complaint on October 5, 2015. Through her amended complaint, Ms. Sikora sought injunctive relief to either stop the Ramseys' construction or require that it be completed in compliance with current setback requirements. She also sought a declaration that any construction on the 410 property must be completed in accordance with the Rawlins Municipal Code. The City filed its answer to the amended complaint on October 8, 2015.

[¶11] The parties filed competing summary judgment motions, and following a hearing on those motions, the district court granted the City's motion. In so ruling, the court found that Ms. Sikora had failed to exhaust her administrative remedies, which the court held was a prerequisite to pursuing judicial relief from the City's approval of the Ramsey project. The court further found that Ms. Sikora had failed to join indispensible parties in the litigation based on her failure to join the Ramseys as defendants. Last, the court interpreted the ordinance governing restoration of nonconforming structures and concluded that the ordinance allows reconstruction of a grandfathered building. The court further concluded that, as long as the new building is within the grandfathered building's footprint, the ordinance allows the new building to retain the replaced building's grandfathered status.

[¶12] Ms. Sikora thereafter filed a timely notice of appeal from the district court's order granting the City summary judgment.

## STANDARD OF REVIEW

[¶13] We review a district court's entry of summary judgment in a declaratory judgment action as follows:

> Summary judgment can be an appropriate resolution of a declaratory judgment action, and we invoke the usual standard for review. *Continental Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015). Summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Felix Felicis, LLC v. Riva Ridge Owners Ass'n*, 2016 WY 67, ¶ 29, 375 P.3d 769, 275 P.3d 769, 778 (Wyo. 2016). We review a

3

grant of summary judgment deciding a question of law de novo. *Id*. We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record. *Sky Harbor Air Serv., Inc. v. Cheyenne Reg'l Airport Bd.*, 2016 WY 17, ¶ 40, 368 P.3d 264, 272 (Wyo. 2016).

*Cheyenne Newspapers, Inc. v. City of Cheyenne*, 2016 WY 125, ¶ 10, 386 P.3d 329, 333 (Wyo. 2016).

## DISCUSSION

### A.     Failure to Exhaust Administrative Remedies

[¶14]   A declaratory judgment action cannot be used as a substitute for an administrative appeal. *City of Casper v. Holloway*, 2015 WY 93, ¶ 24, 354 P.3d 65, 72 (Wyo. 2015); *DOT v. Robbins*, 2008 WY 148, ¶ 12, 197 P.3d 1243, 1246 (Wyo. 2008); *Quinn Revocable Trust v. SRW, Inc.*, 2004 WY 65, ¶ 16, 91 P.3d 146, 151 (Wyo. 2004).  This limitation on the use of declaratory actions prevents judicial intrusion on the administrative process and allows the administrative entity with the relevant expertise to engage in fact finding and any required application of discretion. *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 19, 206 P.3d 722, 728-29 (Wyo. 2009); *Wyo. Dep't of Revenue v. Exxon Mobil Corp.*, 2007 WY 21, ¶ 18, 150 P.3d 1216, 1223 (Wyo. 2007); *Quinn Revocable Trust*, ¶ 19, 91 P.3d at 152.

[¶15]   The City of Rawlins has created just such an administrative process to govern zoning decisions.  The Rawlins Municipal Code specifies that a zoning officer, along with his or her staff, is to administer and enforce the City's zoning ordinances. *Rawlins Municipal Code* § 19.12.030 (1989).  The Code further provides that "[a]ny aggrieved person or the City if directly affected by a decision of the Planning Commission or city staff concerning this title may appeal such decision to the Board of Adjustment." *Rawlins Municipal Code* § 19.76.020 (1989, amended 1995).  Such an appeal "must be filed within thirty days following the issuance of the action by the Planning Commission or the staff person." *Id*.

[¶16]   Ms. Sikora acknowledges that the City of Rawlins has an administrative appeal process in place and that a declaratory action is not a substitute for an administrative appeal.  She nonetheless contends that the district court erred in finding that she failed to exhaust her administrative remedies because she did not receive notice of the City's decision to allow the Ramseys to build a new garage that retains the former garage's grandfathered status.  She further contends that it was impossible to file an administrative appeal because the City issued a number of permits on the project, making the City's

4

decision a moving target.  Neither of these arguments persuades us that Ms. Sikora was justified in failing to exhaust her administrative remedies.

[¶17] First, the Rawlins Municipal Code contains no requirement that neighboring property owners be notified of the issuance of a building permit.  More importantly, though, the record is clear that both Gene Sikora and Clare Sikora knew the old garage had been removed from the 410 property, and they knew the Ramsey garage was being constructed on the same footprint with the same setback.  DeShann Gordon testified she had numerous discussions with Gene Sikora explaining her decision to allow use of the grandfathered setback.  Clare Sikora herself testified that when the posts for the new garage were placed, she and her son both believed the structure was being built in violation of current setback requirements.  Specifically, Ms. Sikora testified:

> A.    Yes. The posts. And we remember telling them then.  My son knew then that it was not located right.  And we asked them about it, and they said, Well, we have a permit.  And so we kind of let it go. * * *
> * * * *
> A.    I know the building was started by the time I got here.  So prior to – I remember the – see, I did not see the building taken down.  But when I got here, I was quite surprised to see the lot was vacant.  And then they started working on it after I got here.  And the very first thing off was my son said, This is not being built right, not according to the City code.

[¶18]  A party seeking to challenge a zoning decision is charged with knowledge of the remedy of administrative review.  *State ex rel. Epp v. Mayor*, 894 P.2d 590, 595 (Wyo. 1995).  Additionally, we have held that, in the absence of any other notice, once a party has actual notice of what he or she believes to be a zoning violation, that party must at least attempt to seek any available administrative review of the alleged zoning violation within a reasonable time.  *State ex rel. Baker v. Strange*, 960 P.2d 1016, 1018-19 (Wyo. 1998).  Regardless of whether Clare Sikora received actual notice of the building permit issued to the Ramseys, and regardless of what information was contained in the posted building permit, she knew of her concerns with the new structure when the building's posts were placed.  Despite that knowledge, Ms. Sikora made no effort to pursue the administrative review remedy provided under the Rawlins Municipal Code.  We therefore agree with the district court's conclusion that Ms. Sikora failed to exhaust her administrative remedies, and the district court on that ground properly declined to further review the City's issuance of the Ramsey building permit.  *See Baker*, 960 P.2d at 1019 ("[T]he Bakers made no effort to pursue an available administrative remedy. That precludes them from seeking relief by way of a petition for writ of mandamus.").

5

## B.  Interpretation of Nonconforming Structure Ordinance

[¶19]  Because Ms. Sikora did not exhaust her administrative remedies, this Court, like the district court, will not review the City's issuance of the Ramsey building permit.  This means we will not consider allegations such as inconsistencies, discrepancies, factual deficiencies, abuses of discretion or arbitrariness in the City's decision.  We have held, however, that even when a failure to exhaust administrative remedies precludes this Court's review of an administrative action, we may still, in a declaratory judgment action, interpret a disputed statute, rule or ordinance that is the basis for the agency action.  *City of Casper*, ¶ 24, 354 P.3d at 72.

[¶20]  In *City of Casper*, the plaintiff filed a declaratory judgment action challenging the city clerk's rejection of voter signatures on a municipal referendum petition.  *City of Casper*, ¶ 12, 354 P.3d at 68.  We concluded that because the plaintiff had not exhausted her administrative remedies, neither the district court nor our Court had jurisdiction to consider whether the city clerk acted arbitrarily and capriciously in rejecting voter signatures.  *Id.*, ¶ 25, 354 P.3d at 72.  We further concluded, however, that this Court did have jurisdiction to interpret the statutes regulating municipal referendum petitions.  *Id.*, ¶ 26, 354 P.3d at 72-73.  We explained the distinction:

> The purpose of declaratory judgment actions is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies. Wyoming's declaratory judgment statute states that it is remedial and should be liberally construed and administered. We do not interpret it in a narrow or technical sense, and there remains the prerequisite that the party seeking declaratory relief present the court with an actual controversy. Trial judges may not dispense with the traditional rules prohibiting them from rendering advisory opinions or adjudicating hypothetical issues. An action for declaratory judgment cannot be a substitute for an appeal from administrative decisions ***but is available even though there is a statutory method of appeal if it concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be based***.

*City of Casper*, ¶ 24, 354 P.3d at 72 (quoting *Voss v. Goodman*, 2009 WY 40, ¶ 5, 203 P.3d 415, 418 (Wyo. 2009)) (emphasis added).

[¶21]   In this case, the parties disagree as to the meaning of the Rawlins ordinance that governs restoration of nonconforming structures.  This is purely a question of statutory interpretation and is thus a proper question for this Court to address in the context of a declaratory judgment action.  We may, however, only rule on a question of statutory interpretation if there remains a justiciable controversy.  *City of Torrington v. Smith*, 2016 WY 126, ¶ 20, 386 P.3d 336, 342-43 (Wyo. 2016).  The elements of a justiciable controversy under the Uniform Declaratory Judgments Act are:

> 1.      The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2.      The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3.      It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4.      The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*City of Torrington*, ¶ 20, 386 P.3d 343 (quoting *Maxfield v. State*, 2013 WY 14, ¶ 14, 294 P.3d 895, 899 (Wyo. 2013)).

[¶22]   As between the City of Rawlins and Ms. Sikora, it is difficult to find a continuing justiciable controversy because our decision that we will not review or disturb the City's issuance of the Ramsey building permit effectively ends the controversy between those two parties.  During the parties' summary judgment argument, however, counsel for Ms. Sikora argued for relief that included an order directing removal of the new Ramsey garage based on the its failure to comply with the ordinance in question.  Ms. Sikora's counsel further argued it would be appropriate for the court to declare Ms. Sikora's rights under the ordinance even if the garage removal could not be ordered until the Ramseys were joined in the action.  It is apparent that the controversy has not been resolved as between Ms. Sikora and the Ramseys, and there thus remains a viable justiciable controversy on which this Court's ruling will operate.  In the interest of judicial economy

7

and to avoid piecemeal litigation, we will therefore interpret the ordinance governing restoration of nonconforming structures.[2]

[¶23] In interpreting a municipal ordinance, we rely on our usual rules of statutory interpretation. *Snake River Brewing Co. v. Town of Jackson*, 2002 WY 11, ¶ 29, 39 P.3d 397, 408 (Wyo. 2002); *Huber v. City of Casper*, 727 P.2d 1002, 1004 (Wyo. 1986). In keeping with those rules:

> * * * We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

*Bates v. Chi. Lumber Co.*, 2016 WY 58, ¶ 27, 375 P.3d 732, 739 (Wyo. 2016) (quoting *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014)).

[¶24] The Rawlins ordinance governing restoration of nonconforming structures provides:

> **Section 19.52.030 Restoration.**
>
> A. If a building or structure used by a nonconforming use is damaged it may be reconstructed, or used as before; provided, that the floor area which existed prior to the damage not be increased, and that the reconstruction commence within six months of such happening, and be completed within one year after reconstruction is started.
>
> B. A nonconforming building or structure that is devoted to a conforming use may be reconstructed,

---

[2] Ms. Sikora has not challenged the district court's ruling that the Ramseys are indispensible parties to her declaratory judgment action. The Declaratory Judgments Act is in fact clear that "no declaration shall prejudice the rights of persons not parties to the proceeding." Wyo. Stat. Ann. § 1-37-113 (Wyo. 2015). We proceed in the absence of the Ramseys as named parties only because our ruling will not prejudice their rights.

structurally altered, restored or repaired in whole or in part, provided the degree of nonconformity is not increased.

*Rawlins Municipal Code* § 19.52.030 (1989).

[¶25] Ms. Sikora argues that this ordinance does not permit the demolition of a nonconforming structure followed by construction of a new nonconforming structure. In support of her argument, she points to the building division's initially-imposed requirement that the Ramseys tear down and re-build the garage one wall at a time and DeShann Gordon's deposition testimony that restoration differs from new construction and reconstruction refers to construction of only a portion of a building, not the entire building. We reject this argument for several reasons.

[¶26] First, when interpreting an ordinance, just as when interpreting a statute, we do not look outside the plain meaning of the terms used in the ordinance unless the ordinance is ambiguous. *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue*, 2017 WY 6, ¶ 27, 387 P.3d 725, 733 (Wyo. 2017). An ordinance "is ambiguous if it is vague or uncertain and susceptible to more than one reasonable interpretation." *Id*. Ms. Sikora has not alleged any vagueness or uncertainty in the ordinance, and we likewise find no ambiguity.

[¶27] Based on the ordinance's plain language, there is no requirement that the reconstruction of a nonconforming building be completed one wall at a time. Additionally, the ordinance does not limit the work that can be done on a nonconforming building to "restoration." Although the ordinance in question is entitled "Restoration," the Code specifies that "section headings contained in this code shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any title, chapter or section hereof." *Rawlins Municipal Code* § 1.01.060 (1983). The language of the ordinance itself allows work other than restoration—using the terms "reconstructed, structurally altered, restored or repaired" to describe the work that may be performed on a nonconforming building.

[¶28] Finally, we turn to the restricted definition Ms. Sikora urges for the term "reconstruct." The Code does not define the term, so we give "reconstruct" its plain meaning, which is "to construct again." *Merriam-Webster's Collegiate Dictionary* 1040 (11th ed. 2007). Nothing in that definition limits reconstruction to only a portion of the building. Indeed, the ordinance itself specifies that the reconstruction may be "in whole or in part, provided the degree of nonconformity is not increased."

[¶29] Based on the plain language of the governing ordinance, we agree with the district court that the Ramseys had the right to demolish the existing nonconforming garage on the 410 property and rebuild a garage within the parameters of the same building footprint.

9

## CONCLUSION

[¶30] We agree with the district court that Clare Sikora failed to exhaust her administrative remedies.  In interpreting the municipal ordinance governing restoration of a nonconforming building, we further agree with the district court that the ordinance allows demolition of the nonconforming building and reconstruction of the building within the same footprint.  Affirmed.