# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 64

**APRIL TERM, A.D. 2025**

**June 13, 2025**

PRESERVE OUR CODY
NEIGHBORHOODS, an unincorporated
association; TERRY and DIANA
SKINNER; DAN and KONNIE HAMAN;
PATRICK and LYNN PITET; SHEILA and
DOUG PETERSON; BECKY STERN;
SIRI and TOM BLAKE; CARLA
EGELHOFF; PEGGY ROHRBACH;
BRANDI and TY NELSON; SARAH
McCLURE; and CHUCK and CELESTE
RADTKE,

Appellants
(Petitioners),

v.                                                    S-24-0244

THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah
corporation sole,

Appellee
(Petitioner/Cross-Petitioner),

and

CITY OF CODY PLANNING, ZONING,
AND ADJUSTMENT BOARD,

Appellee
(Respondent).

*Appeal from the District Court of Park County*
*The Honorable John R. Perry, Judge*

***Representing Appellants:***

   Debra J. Wendtland, Anthony T. Wendtland, and Noah S. Grovenstein, Wendtland & Wendtland, LLP, Sheridan, Wyoming. Argument by Ms. Wendtland.

***Representing The Church of Jesus Christ of Latter-day Saints:***

   Matthew J. Micheli, Bradley T. Cave, and Macrina M. Sharpe, Holland & Hart LLP, Cheyenne, Wyoming; Kendal R. Hoopes, Yonkee & Toner, LLP, Sheridan, Wyoming. Argument by Mr. Cave.

***Representing City of Cody Planning, Zoning, and Adjustment Board:***

   No appearance.

***Before BOOMGAARDEN, C.J., and FOX,\* GRAY, FENN, and JAROSH, JJ.***

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    The Church of Jesus Christ of Latter-day Saints (Church) submitted a site plan and an application for a conditional use permit (CUP) to the City of Cody Planning, Zoning, and Adjustment Board (Board) for construction of a temple on land it owns in the city. After Board approval of the site plan and CUP application, Preserve Our Cody Neighborhoods (POCN)[1] filed petitions for review in the district court challenging each of those approvals.  The district court determined it lacked jurisdiction over POCN's petitions because they were untimely.  We affirm.

## ISSUE

[¶2]    We restate POCN's issues as one:

> Did the district court err when it determined it lacked jurisdiction to reach the merits of POCN's petitions for review because they were untimely?[2]

## FACTS

[¶3]    The Church sought to build a temple on a 4.69-acre parcel of land it owns in the City of Cody.  The land is zoned as Rural Residential (RR).  The temple, as proposed, consisted of a 24' tall building topped with a 76'11" tall steeple, reaching a total height of 100'11".  In May 2023, the Church made three submittals to the Board.  First, it requested a special exemption from the requirements of Cody Ord. § 10-6-2[3] which states the "maximum building height" in the RR zone is "30' above finished grade."  Second, it submitted a site plan under Cody Ord. § 9-2-3.[4]  Third, it applied for a CUP because "[c]hurches and houses of worship" are "conditional uses" in the RR zone under Cody Ord. § 10-7-2.

---

[1] POCN is an unincorporated association of City of Cody landowners opposed to the construction of the temple.  The landowners are Terry and Diana Skinner, Dan and Konnie Haman, Patrick and Lynn Pitet, Sheila and Doug Peterson, Becky Stern, Siri and Tom Blake, Carla Egelhoff, Peggy Rohrbach, Brandi and Ty Nelson, Sarah McClure, and Chuck and Celeste Radtke.

[2] POCN also challenges the district court's denial of its requests to supplement the record on appeal. According to POCN, its supplemental evidence would show that the Board's approval of the Church's site plan and CUP application was tainted by the City Planner's conflict of interest as a member of the Church. POCN raised the conflict of interest claim in its petitions for review.  Because we conclude the district court lacked jurisdiction over POCN's petitions for review, we do not reach this issue.

[3] All references to the City of Cody ordinances are to those in effect at the time of the Board's actions in this case and are contained in the record in Case No. 23-CV-30764 at pages 1812–66.

[4] Cody Ord. § 9-2-3 applies to commercial buildings.  Although the temple is not a commercial building, the City of Cody has historically required churches to comply with this ordinance's site plan requirements.

1

[¶4]    The Board scheduled a special meeting for June 15, 2023, to consider the Church's special exemption request, site plan, and CUP application. It provided public notice of the meeting on May 25 and 30, 2023, and these notices included a June 8, 2023 deadline for the public to proffer any written comments on the Church's submittals. In response, the Board received hundreds of comments both in favor of and in opposition to the construction of the proposed temple. POCN voiced its opposition to the grant of any exceptions to the zoning ordinances, expressing concern over many things, including the negative impacts the temple's lighting and height would have on its members' views of the night sky and scenic surroundings.

[¶5]    Prior to the meeting, the City Planner prepared a 42-page staff report for the Board addressing the Church's special exemption request, site plan, and CUP application. As a preliminary matter, the City Planner questioned whether the proposed temple exceeded the RR zone's "maximum building height" of 30' and asked the Board to decide this question before addressing the special exemption request. He pointed out that a special exemption was unnecessary if the proposed temple complied with the ordinance. The City Planner provided the Board with the definition of "building height" from the City of Cody's zoning code:

> BUILDING HEIGHT: Building height refers to the vertical distance between the average finished grade and either: a) the highest point of the coping of a flat roof; b) the deck line of a mansard roof; or c) the height of a point midway between the eaves of the main roof and the highest ridge line of a gable, hip or gambrel style roof. . . .

Cody Ord. § 10-2-1. Relying on subsection (a), he contended that the proposed temple did not exceed the "maximum building height" of 30' because it has a flat roof and the distance between the average finished grade to the highest point of the coping of the flat roof was less than 30' tall. The City Planner stated the steeple should not be considered in calculating the temple's building height because the steeple's base was to be suspended by a steel framework above the temple's flat roof, the steeple would be open so that rain and snow would fall through it to the temple's flat roof, and the steeple would not be habitable. He recommended the Board adopt his interpretation and find a special exemption was unnecessary. Turning to the Church's site plan, the City Planner recommended Board approval of the site plan subject to 15 conditions. Finally, the City Planner recommended the Board approve the CUP. Cody Ord. § 10-14-1(D) requires the Board to consider seven factors when determining whether to grant a CUP, and he asserted all seven factors were satisfied.[5]

---

[5] Cody Ord. § 10-14-1(D) gives the Board authority to approve, impose conditions on, or deny CUP applications. It requires the Board to base its decision upon seven criteria: (1) whether the site is large

## A.      June 15, 2023 Special Meeting and Church's First Petition for Review

[¶6]    The Board's June 15, 2023 special meeting was well attended. Five members of the seven-member Board were present at the meeting, one member was out of town, and another member recused. The City Planner and the City Attorney were also present. After allowing extensive comments from the public, including comments from POCN members and its attorney, the Board discussed the City Planner's interpretation of "building height." The Board did not pass a motion to approve or reject the City Planner's interpretation. The Board then took up the Church's request for a special exemption. A motion was made to approve the special exemption request, but the motion did not receive a second. After discussion, the Board agreed to table the matter.

[¶7]    Next, the Board considered the Church's site plan. The City Planner noted the Church had agreed to the 15 conditions outlined in the staff report. After discussion, a motion was made to approve the site plan. Three of the five Board members present at the meeting voted in favor of the motion, one abstained, and one opposed the motion. The Board believed four votes were required to pass a motion on the site plan and concluded the motion failed. Four Board members then voted in favor of a motion to table the site plan issue.

[¶8]    The Board turned to the CUP application. The City Planner outlined his findings with respect to each of the seven factors pertinent to issuance of a CUP under Cody Ord. § 10-14-1(D). One of the factors is consideration of whether the proposed use is consistent with the applicable provisions of the Cody Master Plan. Principle 3.1.f. of the Cody Master Plan pertains to "[l]imit[ing] the height of new and remodeled construction to respect the existing or desired character of neighborhoods and districts, maintain a consistent scale of development, and preserve scenic views." The City Planner discussed his finding related to this principle, saying:

> Finding: The temple building complies -- well this is
> what is still up for discussion but the proposed finding is that
> the temple building complies with the building height for the

---

enough to accommodate the proposed use and meet all of the dimensional standards and development regulations of the applicable zoning district; (2) whether the use is compatible with all other uses in the immediate area and with permitted uses that may be established in the area; (3) whether the proposed use's operational characteristics would be materially detrimental to any persons, property, or the general welfare due to excess traffic, noise, smoke, fumes, and other similar hazards; (4) whether the proposed use includes provisions for necessary and desired public utilities and facilities; (5) whether the proposed use will create excessive additional costs for public utilities and services that would be materially detrimental to the community's economic welfare; (6) whether the proposed use will result in the destruction, loss, or damage of a natural, scenic, or historic feature of significant importance; and (7) whether the proposed use is consistent with the applicable provisions of the Cody Master Plan. Cody Ord. § 10-14-1(D).

zone in which it is located. Again, I guess that would be up to interpretation.

After much discussion, the Board moved "to approve the Conditional Use Permit as stated in the staff report with findings and recommendations therein . . . ." The motion passed with four Board members voting in the affirmative and one member opposing the motion. The minutes from the Board's June 15, 2023 meeting recite that the Board voted on and approved the CUP "as stated in the staff report with findings and recommendation therein . . . after [the City Attorney] advised the board that the building height interpretation and special exemption request would remain separate applications for discussion at a later date." Attached to the minutes were findings of fact for the CUP from the staff reports, which included the finding that the temple complies with the building height for the zone in which it is located. Nearly six hours after it first convened, the Board adjourned the meeting.

[¶9] On July 17, 2023, the Church filed a petition for review of the Board's actions on the site plan in the district court (Case No. 23-CV-30734). It argued the Board erred as a matter of law when it determined that the motion to approve the site plan at the June 15, 2023 meeting failed for a lack of a majority. It maintained that the affirmative vote of three of the five Board members present at that meeting was sufficient to approve the Church's site plan under Cody Ord. § 9-2-3. POCN moved to intervene but did not file a cross-petition for review or a separate petition for review challenging any of the actions the Board took at the June 15, 2023 meeting.

**B.      June 27, 2023 Meeting and Church's Second Petition for Review**

[¶10]  The Board held its regularly scheduled meeting on June 27, 2023. This time, six members of the Board were present. The Board voted to approve the minutes from the June 15, 2023 meeting with minor changes. The Board discussed the Church's request for a special exemption. A motion was made to find that the proposed temple complied with the RR zone's "maximum building height" of 30' and therefore a special exemption related to the temple's height was unnecessary. The motion failed when four Board members opposed it. The Board next discussed its prior approval of the CUP. The Board Chair explained: "as we were reviewing [the June 15, 2023] minutes, we had a little bit of a hiccup in the procedural side of things[.]" He noted that the Board's intent at the June 15, 2023 meeting when approving the CUP "was to not accept the building height interpretation of the City [P]lanner," yet by adopting the findings and recommendations in the staff report, the Board inadvertently found the proposed temple complies with the RR zone's building height restriction. A motion was made and approved to reconsider the previously approved CUP and to condition the CUP on the approval of a special exemption relating to the temple's height. The Board then considered the Church's request for a special exemption, but no agreement was reached. Finally, it discussed and re-tabled the site plan.

4

[¶11] On July 27, 2023, the Church filed its second petition for review with the district court (Case No. 23-CV-30738), claiming the Board did not have the power or authority at the June 27, 2023 meeting to reconsider and modify its findings concerning the CUP that had been approved at the June 15, 2023 meeting. It also alleged the Board had no power or authority to reconsider and table the site plan that had been previously approved at the June 15, 2023 meeting. POCN again moved to intervene but did not file a cross-petition for review or a petition for review.

## C.    July 25, 2023 Special Meeting and POCN's First Petition for Review

[¶12] On July 21, 2023, the Church withdrew its request for a special exemption. Four days later, on July 25, 2023, the Board held a special meeting with six members present. The Board discussed the site plan and again voted to table it. The Board then proceeded to make amended findings related to the approved CUP. Among other findings, the Board found that "[t]he highest point of the 'High Roof' on the Temple building . . . adhere[s] to the 30 ft. building height limit set for the Rural Residential Zone where the structure[] [is] located."[6] The CUP with the amended findings was recorded in the Park County Clerk's Office on August 29, 2023.

[¶13] On August 21, 2023, POCN filed a petition for review with the district court (Case No. 23-CV-30754) contending the Board's approval of the CUP at the July 25, 2023 meeting was arbitrary and capricious, contrary to the law, and unsupported by substantial evidence. The Church filed a cross-petition for review, arguing the Board did not have the power or authority at the July 25, 2023 meeting to amend the findings related to the already approved CUP.

## D.    August 8, 2023 Meeting and POCN's Second Petition for Review

[¶14] On August 8, 2023, the Board held its regularly scheduled meeting where it approved the Church's site plan subject to the 15 conditions recommended by the City Planner (with minor adjustments to two of those conditions) and two additional conditions related to the lighting of the temple and its surrounding site. On August 24, 2023, POCN filed its second petition for review with the district court (Case No. 23-CV-30764) challenging the Board's approval of the site plan at the August 8, 2023 meeting as arbitrary, capricious, not in accordance with the law, and unsupported by substantial evidence. The Church filed a cross-petition for review, arguing the Board approved the site plan at the June 15, 2023 meeting and it did not have the power or authority to revisit that decision at the August 8, 2023 meeting.

---

[6] "High Roof" refers to a label on the Church's architectural drawings of the proposed temple. It appears to refer to the roof of the habitable portion of the temple, which is 20'5" above the ground.

5

**E. District Court's Decisions on Parties' Petitions For Review**

[¶15] The district court consolidated the parties' petitions for review. It determined the Board approved the site plan at the June 15, 2023 meeting under Cody Ord. § 9-2-3 when three of the five Board members present at the meeting voted to approve it; the Board approved the Church's CUP application at the June 15, 2023 meeting; and the Board had no authority to subsequently modify the previously approved site plan or CUP. Because the Board's approvals of the site plan and CUP at the June 15, 2023 meeting constituted final agency action, the court found it was without jurisdiction to consider the merits of POCN's petitions for review because they were filed more than 30 days after those approvals. POCN timely appealed. POCN and the Church filed briefs, but the Board declined to participate in this appeal.

## STANDARD OF REVIEW

[¶16] We review de novo the district court's decision that it lacked jurisdiction to reach the merits of POCN's petitions for review because they were untimely. *SEG v. GDK*, 2007 WY 203, ¶ 4, 173 P.3d 395, 395 (Wyo. 2007). In deciding that it lacked jurisdiction, the district court interpreted various city ordinances and determined the Board did not act in accordance with the law. "Interpretation of statutes, administrative regulations and municipal ordinances is a matter of law, which we review *de novo*." *Tarver v. City of Sheridan Bd. of Adjustments*, 2014 WY 71, ¶ 20, 327 P.3d 76, 83 (Wyo. 2014) (citations omitted). Our review of the Board's decisions is governed by Wyo. Stat. Ann. § 16-3-114(c)(ii), which requires us to

> [h]old unlawful and set aside agency action, findings and conclusions found to be:
>
> > (A)   Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> > .   .   .
>
> > (E)   Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii)(A), (E) (LexisNexis 2023); *Contango Res., LLC v. Fremont Cnty.*, 2025 WY 29, ¶ 23, 565 P.3d 167, 173 (Wyo. 2025). We review the Board's decisions as if they came directly to us, and "we give no deference to the district court's decision." *HB Fam. Ltd. P'ship v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2020 WY 98, ¶ 32, 468 P.3d 1081, 1091 (Wyo. 2020) (citing *Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 10, 394 P.3d 454, 457 (Wyo. 2017)).

6

## DISCUSSION

***Did the district court err when it determined it lacked jurisdiction to reach the merits of POCN's petitions for review because they were untimely?***

[¶17]  W.R.A.P. 12.04(a) requires a petition for judicial review of an administrative action to be filed in the district court "within 30 days after service upon all parties of the final decision of the agency[.]"  "[A] final administrative order is one ending the proceedings, leaving nothing further to be accomplished.  If the agency retains the matter for further action, the order is not final."  *Air Methods/Rocky Mountain Holdings, LLC v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2018 WY 128, ¶ 54, 432 P.3d 476, 489 (Wyo. 2018) (quoting *Douglass v. Wyo. Dep't of Transp.*, 2008 WY 77, ¶ 17, 187 P.3d 850, 854 (Wyo. 2008) (quoting *MGTC, Inc. v. Pub. Serv. Comm'n of Wyo.*, 735 P.2d 103, 106 (Wyo. 1987))).  The "timely filing of a petition for review of administrative action is mandatory and jurisdictional."  *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 62, ¶ 7, 155 P.3d 1041, 1043 (Wyo. 2007).

[¶18]  The district court decided POCN's August 2023 petitions for review challenging the Board's approval of the Church's site plan and CUP application were untimely because they were filed more than 30 days after the Board approved the site plan and CUP at the June 15, 2023 meeting, and the Board was without authority to subsequently reconsider and modify those approvals.  POCN claims the district court erred in concluding its petitions for review were untimely.  It contends the Board did not approve the site plan and CUP at the June 15, 2023 meeting and no final agency action occurred at that meeting which could be appealed.  POCN maintains final agency action with respect to the site plan and CUP did not occur until the August 8, 2023 and July 25, 2023 meetings, respectively, rendering its petitions for review timely.

### A.  Site Plan

[¶19]  The crux of the dispute between the parties as it relates to the site plan is whether its approval required the affirmative vote of the majority of the Board members present at the June 15, 2023 meeting (three members) or a majority of the entire Board as comprised (four members).  Relying on Cody Ord. § 9-2-3,[7] the district court agreed with the Church

---

[7] Cody Ord. § 9-2-3 states:

> **MEETING WITH PLANNING, ZONING, AND ADJUSTMENT BOARD REQUIRED BEFORE BUILDING PERMIT ISSUED:**
> Before the issuance of any permit under the International Building Code for commercial buildings situated within the City, the applicant, property owner and occupant shall meet with the Planning, Zoning and Adjustment Board to review the application and plans insofar as they pertain to the

and determined approval of the site plan required a favorable vote from a majority of the board members in attendance at the meeting.  As a result, the Board approved the site plan when three of the five Board members present at the June 15, 2023 meeting voted in favor of it.  POCN does not dispute that Cody Ord. § 9-2-3 requires only a majority of the Board members in attendance at the meeting to approve the site plan.  It claims, however, that Cody Ord. § 9-2-3 conflicts with the Board's enabling statute, Wyo. Stat. Ann. § 15-1-608(c), which requires a majority of all Board members, whether present at the meeting or not, to approve a site plan.  Applying that standard, POCN maintains the Board did not approve the site plan at the June 15, 2023 meeting because only three members of the seven-member Board voted to approve the site plan, and because it lacked a majority vote for approval, the Board tabled the site plan discussion for further review.  POCN argues there was no final agency decision with respect to the site plan at the June 15, 2023 meeting, and it was not required to file a separate petition for review or file a cross-petition for review in Case No. 23-CV-30734, and we should dismiss the Church's petition for review in that case for lack of a final agency decision.

[¶20]  "When interpreting a statute, we seek the legislature's intent 'as reflected in the plain and ordinary meaning of the words used in the statute.'"  *In Int. of JB*, 2017 WY 26, ¶ 12, 390 P.3d 357, 360 (Wyo. 2017) (quoting *Butler v. State*, 2015 WY 119, ¶ 7, 358 P.3d 1259, 1262 (Wyo. 2015)).  "We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection."  *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014).  "When a statute is clear and unambiguous, the statute's plain language is given effect."  *Sinclair Wyo. Ref. Co. v. Infrassure, Ltd*, 2021 WY 65, ¶ 12, 486 P.3d 990, 994 (Wyo. 2021) (citing *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 69, 226 P.3d 889, 916 (Wyo. 2010)).  The same rules apply when we interpret a city ordinance.  *See Sorensen v. Halling*, 2025 WY 8, ¶ 23, 561 P.3d 1241, 1247 (Wyo. 2025) ("In interpreting a municipal ordinance, we rely on our usual rules of statutory interpretation." (quoting *Sikora v. City of Rawlins*, 2017 WY 55, ¶ 23, 394 P.3d 472, 479 (Wyo. 2017))).

[¶21]  Wyo. Stat. Ann. § 15-1-608 outlines the powers and duties of a city's board of adjustment.  It states in pertinent part:

> (a)  The board shall:
>
> (i)  Hear and decide:

---

exterior of a commercial building and site plan conditions. *The issuance of a permit shall be conditioned upon the applicant receiving an affirmative vote of a majority of the Planning, Zoning and Adjustment Board members in attendance at said meeting.*

(Emphasis added.)

(A)   Appeals from and review any order, requirement, decision or determination made by an administrative official *charged with the enforcement of any ordinance adopted pursuant to this article*;

(B)   All matters referred to it or upon which it is required to pass *under any such ordinance*.

.   .   .

(b)   The board has the power to:

(i)   Hear and decide special exemptions to the terms *of the ordinance* upon which the board is required to pass *under the ordinance*;

.   .   .

(ii)   Vary or adjust the strict application of any of the requirements *of any ordinance adopted pursuant to this article* in the case of any physical condition applying to a lot or building if the strict application would deprive the owner of the reasonable use of the land or building involved.

.   .   .

(iii)   Grant exceptions and variances upon request after a showing that an illegal construction or a nonconforming building or use existed for a period of at least five (5) years in violation of local ordinance and the city or town has not taken steps toward enforcement;

(iv)   Reverse or affirm wholly or partly the order, requirement, decision or determination as necessary, but no power exercised under this paragraph shall exceed the power or authority vested in the administrative officer from whom the appeal is taken.

(c)   The concurring vote of a majority of the board is necessary to reverse any order, requirement, decision or determination of any administrative official, or to decide in

9

favor of the application on any matter upon which it is required to pass under any ordinance or to effect any variation *in the ordinance*.

Wyo. Stat. Ann. § 15-1-608 (LexisNexis 2023) (emphasis added).

[¶22]   Section 15-1-608 is unambiguous.  Reading the statute as a whole, it clearly applies when a city's board of adjustment[8] is acting on ordinances "adopted pursuant to this article."  "[T]his article" refers to Article 6 of Title 15 of the Wyoming Code which authorizes municipalities to enact ordinances and regulations governing zoning.  *Ahearn v. Town of Wheatland*, 2002 WY 12, ¶ 10, 39 P.3d 409, 414 (Wyo. 2002) (citing Wyo. Stat. Ann. §§ 15-1-601 through -611).  As a result, under § 15-1-608(c), a concurring vote of a majority of a city's board of adjustment is necessary: (1) to reverse any order, requirement, decision or determination of any administrative official *charged with the enforcement of any zoning ordinance*; (2) to decide in favor of an application on any matter upon which the board is required to pass under *any zoning ordinance*; or (3) to effect any variation *in a zoning ordinance*.

[¶23]   Section 15-1-608(c) does not apply to Cody Ord. § 9-2-3 because Cody Ord. § 9-2-3 is not a zoning ordinance.  The City of Cody's zoning ordinances are contained in Title 10 of its Municipal Code.  Cody Ord. § 9-2-3 is in Title 9 of Cody's Municipal Code, which contains "Building Regulations."  Wyo. Stat. Ann. § 15-1-608(c) does not address building regulations and does not require a majority vote of the entire Board to approve actions not governed by zoning ordinances.  There is no conflict between the statute and Cody Ord. § 9-2-3, which mandates only an affirmative vote from a majority of the members present at the meeting to approve a site plan.  No other Wyoming statute specifies the number of

---

[8]  The Church claims Cody Ord. § 9-2-3 does not conflict with Wyo. Stat. Ann. § 15-1-608 because the statute only applies to decisions delegated to boards of adjustment.  While the Board in this case acts as the City of Cody's planning commission, zoning commission, and board of adjustment, the Church maintains the Board is not acting in its capacity as a board of adjustment when it reviews site plans.  Wyoming statutes allow a city's planning commission to serve as the city's zoning commission and board of adjustment.  Wyo. Stat. Ann. §§ 15-1-502 (allowing city to have a planning commission); 15-1-604 (allowing for an already existing city planning commission to be appointed as the zoning commission); 15-1-605 (allowing the mayor, with the consent of the governing body, to appoint the city planning commission as the board of adjustment).  The City of Cody has elected this procedure.  *See* Cody Ord. § 10-2-1 ("The Planning and Zoning Board serves as the Planning Commission as authorized by Wyoming Statutes section 15-1-502, the Zoning Commission as authorized by Wyoming Statutes section 15-1-604, and the Board of Adjustment as authorized by Wyoming Statutes section 15-1-605; and has the powers and duties as prescribed by State law and City ordinances.").  Cody Ord. § 9-2-3 requires the "Planning, Zoning and Adjustment Board" to approve site plans whereas Cody Ord. § 10-14-1(C) requires the "Planning and Zoning Board" to decide whether to issue a CUP and Cody Ord. § 10-14-2 requires the "Planning and Zoning Board, in [its] capacity as the Board of Adjustment," to decide whether to grant a special exemption from the terms of a zoning ordinance.  Given that Cody Ord. § 9-2-3 does not limit the Board's role in reviewing site plans, we decline to decide the matter on the basis argued by the Church.

votes required for site plan approval and Cody Ord. § 9-2-3 controls. *See Ahearn*, ¶ 15, 39 P.3d at 416 (because ordinance did not conflict with statute and no other state statute addressed the issue, the town council was required to comply with the ordinance). The Board approved the Church's site plan at the June 15, 2023 meeting when three of the five members in attendance at the meeting voted to approve it.

[¶24] Once the Board approved the site plan at the June 15, 2023 meeting, nothing in Wyoming law or in the City of Cody ordinances allowed the Board to reconsider its approval at the subsequent meetings. *See Rosenberger v. City of Casper Bd. of Adjustment*, 765 P.2d 367, 369 (Wyo. 1988) (agreeing with the district court that the board of adjustment could not rehear its decision granting a CUP because the board's enabling statutes did not give it the express power to rehear its final decisions and the board's own rules and regulations did not allow for rehearing). POCN does not contend otherwise.[9]

[¶25] The Board's approval of the site plan at the June 15, 2023 meeting constituted a final administrative decision, as it concluded the proceedings regarding the Church's site plan. *See, e.g.*, *Goodman v. Voss*, 2011 WY 33, ¶ 22, 248 P.3d 1120, 1125–26 (Wyo. 2011) (determining December 15 Board of County Commissioner's order establishing the private road constituted final agency action because it "finally determined the necessity of a private road, it located the road, and it assessed damages. In short, it determined the merits of the controversy"), *superseded on other grounds by statute as recognized in Whaley v. Flitner Ltd. P'ship*, 2017 WY 59, ¶¶ 16–17, 395 P.3d 653, 659 (Wyo. 2017); *Ebzery v. City of Sheridan*, 982 P.2d 1251, 1254 (Wyo. 1999) (holding that minutes from the July 30 City of Sheridan Board of Adjustment meeting constituted the final agency decision because the minutes indicated "the Board unequivocally granted the variance [and] adopted findings which had been dictated into the record. . . . Thus, there was nothing further to accomplish after the July 30 meeting."). POCN had 30 days from June 15, 2023, to file its petition for review. W.R.A.P. 12.04(a). It did not file it until August 24, 2023. The district court correctly determined it lacked jurisdiction over POCN's petition for review challenging the site plan because it was untimely. *Chevron*, ¶ 7, 155 P.3d at 1043.

## B.    CUP

[¶26] The district court found the Board approved the Church's application for a CUP at the June 15, 2023 meeting, and the Board was without authority to subsequently modify the CUP except under the conditions outlined in Cody Ord. § 10-14-1(K), none of which applied. POCN contends the Board did not approve the CUP at the June 15, 2023 meeting because: (1) it never reached a decision at that meeting regarding the temple's height and

---

[9] Although neither party addresses it, the fact the Board tabled the site plan issue at the June 15, 2023 meeting did not affect its previous vote approving the site plan. Under Robert's Rules of Order, the purpose of a motion "to lay on the table" is to "lay aside [a] *pending* question" not to undo a vote. *See* Robert's Rules of Order (Revised) Art. V, § 28, http://www.rulesonline.com/ (last visited May 16, 2025) ("[a motion to lay on the table] cannot be applied to anything except a question *actually pending*" (emphasis added)).

11

tabled the Church's request for a special exemption; (2) the City Attorney advised the Board prior to approving the CUP that it could and did preserve its authority to render a decision on the temple's height in the future and the meeting minutes reflect this; and (3) the Board continued to meet and discuss the temple height issues after the June 15, 2023 meeting, including at the June 27, 2023 meeting, where the Board expressly made the Church's CUP application conditional on the Church receiving a special exemption with respect to the temple's height, and at the July 25, 2023 meeting, where the Board, confronted with the fact that the Church had withdrawn its request for a special exemption, approved the CUP with the specific finding that the temple's "high roof" complied with the 30' maximum building height restriction. In other words, POCN argues the Board's failure to reach a final decision on the temple's height at the June 15, 2023 meeting means it did not reach a final decision on the CUP at that meeting. POCN also relies on the fact the Board did not issue/record the CUP until August 29, 2023, and the findings included with the recorded CUP were those made at the July 25, 2023 meeting.

[¶27] The Board approved the CUP at the June 15, 2023 meeting and that approval included a final decision on the temple's height. At that meeting, the Board failed to reach agreement on two items of business. These were the separate consideration of the City Planner's interpretation of "building height" and the Church's request for a special exemption. After these items of business, the Board took up the question of the CUP and it passed a motion "to approve the conditional use permit as stated in the staff report with the findings and recommendations therein."[10] The findings and recommendations in the written staff report included the following: (1) the proposed temple "complies with the Cody zoning regulations for . . . maximum building height, as it . . . [d]oes not exceed 30 feet in 'building height' as defined by [Cody Ord. § 10-2-1]"; (2) because "the height requirements are met, the [Church's request for a special exemption] is unnecessary"[;] (3) the Church's CUP application satisfies the seven factors the Board must consider under Cody Ord. § 10-14-1(D); and (4) the CUP should be approved. The staff report verbally presented by the City Planner to the Board at the June 15, 2023 meeting included findings that the Church's CUP application satisfied all seven factors necessary for issuance of a CUP and "that the temple building complies with the building height for the zone in which it is located." By voting to approve the CUP as stated in the staff report with its findings and recommendations, the Board approved the CUP and made a final decision that the proposed temple's height complied with the RR zone's "maximum building height" restriction, thereby rendering the Church's request for a special exemption moot.

[¶28] Once the Board approved the CUP with findings at the June 15, 2023 meeting, it was without authority to modify the CUP or those findings at the June 27 and July 25, 2023 meetings. In *Rosenberger*, the City of Casper's Zoning Board of Adjustment granted a CUP to a nonprofit homeless shelter on August 6. *Rosenberger*, 765 P.2d at 368.

---

[10] Unlike approval of a site plan under Cody Ord. § 9-2-3, a majority of the entire Board as comprised is required to approve a CUP. *See* Wyo. Stat. Ann. § 15-1-608(c); Cody Ord. §§ 10-4-3(E), 10-14-1(C).

Appellants filed a motion for rehearing with the Board on November 13, which the Board denied on December 3. *Id.* The next month, Appellants appealed the denial of their motion for rehearing to the district court. *Id.* The district court decided the Board did not have authority to rehear its original decision granting the CUP, and therefore, its decision denying rehearing was not an appealable order. *Id.* It dismissed Appellants' appeal because it was not timely filed as to the Board's original decision. *Id.* We agreed that the Board did not have the authority to rehear its original decision, explaining:

> The statutes allowing the City of Casper to appoint the Board do not give the Board the express power to rehear its final decisions. *See* W.S. 15-1-605 through 15-1-609 (July 1980 Repl.). Further, the Board's own rules and regulations, which appear to have been adopted pursuant to the [Wyoming Administrative Procedure Act], do not set forth a specific procedure for rehearing final Board decisions concerning Conditional Use Permits. No statutory or regulatory authority, under any rationale, exists for the Board to rehear its final decision on a Conditional Use Permit.

*Id.* at 369.

[¶29]  In this case, the Board's enabling statutes do not allow it to modify an approved CUP. Wyo. Stat. Ann. §§ 15-1-502, 15-1-507 (planning commission), 15-1-604 (zoning commission), 15-1-605 through -609 (board of adjustments). Cody Ord. § 10-14-1(K)(1) allows a CUP to be

> revoked, suspended, or modified by the board for cause upon notice to the permit holder and public hearing, for either a breach or violation of any condition of approval or limitation of the permit; or, if the conditional use is operated in a manner so as to create a public nuisance as defined and regulated by this Code.

None of these conditions are present here. The Church did not breach any condition of approval or limitation of the CUP and, in fact, the Board's approval of the CUP at the June 15, 2023 meeting did not impose any conditions or limitations. The Church did not operate the CUP in a manner that created a public nuisance. POCN does not argue otherwise but claims Cody Ord. § 10-14-1(K) applies only to approved CUPs and the CUP was not approved at the June 15, 2023 meeting. The Board approved the CUP at the June 15, 2023 meeting.

[¶30]  POCN makes much of the fact that the Board believed, based on the advice of the City Attorney at the June 15, 2023 meeting, that it could approve the CUP and still revisit

13

the City Planner's "building height" interpretation and the Church's request for a special exemption because they were separate applications. The City Attorney correctly told the Board that the "building height" interpretation and the special exemption request were separate from the CUP application and that the Board could approve the CUP conditioned on the Church receiving approval on its special exemption. *See* Cody Ord. § 10-14-1(D) (allowing the Board to impose conditions on a CUP), (E) (authorizing Board to impose conditions on the proposed use, including limiting the height of the project or any component thereof). While he also told the Board that the "building height" interpretation and the special exemption request would remain pending if the Board approved the CUP, it is not clear from the meeting transcript that the City Attorney knew when he offered this advice that the Board would be adopting the staff findings *in toto*. Moreover, when the City Attorney informed the Board that any motion to approve the CUP required findings related to the seven factors outlined in Cody Ord. § 10-14-1(D), the Chair referred the other Board members to the CUP findings in the written staff report and the City Planner stated: "My long diatribe up here, I was reading the findings so I guess if you agreed with that, that is what you would adopt is the findings as presented by staff." When asked if the motion could be to approve the CUP with all the findings and recommendations as written in the staff report, the City Planner said yes "[u]nless of course you disagree with [any] of the recommendations or the findings . . . ." Accordingly, the Board knew that if it adopted the findings and recommendations of staff, those findings would include those the City Planner read into the record, including that the proposed temple complies with the building height for the zone in which it is located.[11] Even if some Board members may have intended to reserve the height issue for future action and mistakenly believed that they had done so, these assumptions do not override the clear language of the motion and are not grounds for the Board to modify a previously approved CUP. *See, e.g.*, *Cook v. Zoning Bd. of Adjustment for the City of Laramie*, 776 P.2d 181, 184 (Wyo. 1989) ("Suffice it to observe that the action of the Board speaks from its written record[.]"); *In re J.H. Carter Builder, Co., Inc.*, 381 S.E.2d 889, 891 (N.C. Ct. App. 1989) (a board of adjustment's rules requiring a rehearing to be denied unless there is a substantial change in the facts or evidence prohibited the board from rehearing a variance application because of one member's mistaken belief that the board had no authority to change the area requirements of a zoning ordinance or because one member wanted to change his vote); *Haba v. Cuff*, 201 N.E.2d 343, 345 (Ohio Ct. App. 1963) (while an administrative agency cannot correct its orders it can correct clerical error; "[t]he power to correct a record because of clerical errors should not be used, however, to change a previous order *because hindsight makes it*

---

[11] The fact that the City Planner informed the Board of the effect of any vote to adopt the findings of staff belies POCN's claim in its reply brief that the City Planner's actions constituted a "'gotcha' tactic." POCN also argues that the City Planner expressed equivocation on June 16, 2023, as to whether the Board's adoption of the staff's findings when approving the CUP meant it accepted his interpretation of "building height" and mooted the Church's special exemption request. This argument is unavailing. It is clear any equivocation was due to the City Planner proceeding from memory, as the videotape of the June 15, 2023 meeting was not yet available. Nevertheless, the City Planner's interpretation of the Board's actions is not controlling.

*possible to see errors in judgment not apparent at the time of entering the original order, or in changing the order to conform to that which a board now wishes it had done*" (emphasis added)); 4 Patricia E. Salkin, *American Law of Zoning* § 40:49 (5th ed. 2024) ("Absent a provision in a statute or ordinance which authorizes a board of appeals to rehear a case which it has decided, some courts hold that a board is without authority to review its own decisions solely for the purpose of reconsidering the evidence adduced at the first hearing, *or applying a law unknown or misunderstood by the board when the decision was made*." (emphasis added)).

[¶31] Finally, the fact that the CUP was not recorded with the Park County Clerk's Office until August 29, 2023, and included the findings from the July 25, 2023 meeting is of no moment. The Board had no authority at the July 25, 2023 meeting to modify the findings the Board made when it approved the CUP at the June 15, 2023 meeting. Additionally, the recorded CUP states the Board approved the CUP on June 15, 2023.

[¶32] The Board's approval of the CUP at the June 15, 2023 meeting constituted a final agency decision as it left nothing more for the Board to do with respect to the CUP. *See, e.g.*, *Goodman*, ¶ 37, 248 P.3d at 1130; *Ebzery*, 982 P.2d at 1254. Therefore, POCN had 30 days from June 15, 2023, to file its petition for review challenging that approval. W.R.A.P. 12.04(a). It did not file until August 21, 2023. The district court correctly decided it did not have jurisdiction over POCN's petition for review challenging the CUP as it was untimely. *Chevron*, ¶ 7, 155 P.3d at 1043.

## *CONCLUSION*

[¶33] The district court correctly decided it lacked jurisdiction over POCN's untimely petitions for review. Affirmed.